**Joann GWYNN, Plaintiff,**

v.

**TRANSCOR AMERICA, INC., a Tennessee corporation, Jack Ter Linden, Randy Goodman, Defendants.**

No. Civ.A. 95–K–2886.

United States District Court, D. Colorado.

Oct. 21, 1998.

Todd A. Jansen, Cockrell, Quinn & Creighton, Denver, CO, for Plaintiff.

David R. Brougham, Hall & Evans, L.L.C., Denver, CO, Jonathan L. Sacks, White House, TN, James H. Drescher, Stokes & Bartholomew, P.A., Nashville, TN, for Defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

### I. *Introduction.*

Joann Gwynn brings this action for damages under 42 U.S.C. § 1983, asserting violations of the Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments to the Constitution of the United States, against TransCor America, Inc., a Tennessee corporation, and its former employees, Jack ter Linden and Randy Goodman. She also asserts state law claims for negligent supervision (against TransCor); sexual assault and battery (against TransCor and ter Linden); and outrageous conduct (against all Defendants). The claims arise out of alleged mistreatment of Gwynn by the Defendants between November 21, 1993 and November 27, 1993, when she was being transported by Goodman and ter Linden from Oregon to Colorado, pursuant to a contract TransCor had with the Colorado Department of Corrections. Defendants deny the allegations of the Amended Complaint. Original jurisdiction exists over the § 1983 claim under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

Pending are Defendants' motions to dismiss. I deny TransCor's motion and grant in part and deny in part those of Goodman and ter Linden.

### II. *Procedural Background.*

On July 30, 1998, I entered an order on Motion for Clarification. At that time, there were then three pending motions to dismiss: (1) Defendant Jack ter Linden's motion to dismiss filed July 31, 1996, (2) Defendant Randy Goodman's motion to dismiss filed October 11, 1996, and (3) Defendant TransCor America Inc.'s motion to dismiss filed May 31, 1996. On September 10, 1997, Magistrate Judge Schlatter issued a recommendation concerning all three motions. Plaintiff and Defendants ter Linden and Goodman filed objections to the recommendation. On October 8, 1997, I issued an Order of Recommission to Magistrate Judge requiring him to reconsider all three pending motions to dismiss in accordance with that order.

On June 8, 1998, Magistrate Judge Schlatter issued a further recommendation addressing only two of the three pending motions, those filed by Goodman and ter Linden, but making no reference to that filed by TransCor America, Inc. On June 25, 1998, noting that no objection had been filed to the recommendation, I accepted and adopted it as an order of this court. Also on June 25, 1998, Defendants Goodman and ter Linden filed objections to the June 8, 1998 recommendation.

On June 30, 1998, Plaintiff filed an objection to Defendants' objection to the June 8, 1998 recommendation, stating that it was untimely and that I had already adopted the recommendation as there had been no timely objection filed. On July 8, 1998, Defendants ter Linden and Goodman responded to Plaintiff's objection, asserting that their objections were timely under Fed.R.Civ.P. 72(b) and 6(a). In my June 30, 1998 Order on Motion for Clarification, computing the time for filing the objections under Rule 6(a), I concluded Defendants' objections had been timely filed. The order further stated I would determine Defendants' motions to dismiss *de novo* and would disregard all previously filed briefs and objections relating to the motions as well as all proceedings before, rulings and recommendations of the magistrate judge relating to the said motions.

I vacated the June 25, 1998 order adopting the June 8, 1998 recommendation of the mag-

istrate judge, the hearing previously scheduled for August 7, 1998, and all previous briefing schedules. I denied the request to recommission the magistrate judge. I further ordered that, or before August 14, 1998, each Defendant could file a brief in support of its/his motion to dismiss; on or before August 28, 1998, Plaintiff could file a response to each such brief; and on or before September 4, 1998, each Defendant could file a reply brief.

On August 14, 1998, Defendants Randy Goodman and Jack ter Linen filed a brief in support of their motions to dismiss, attaching affidavits and other documents in support thereof. On August 28, 1998, Gwynn filed a response, attaching her affidavit and the contract between TransCor and the Colorado Department of Corrections. On September 4, 1998, Goodman and ter Linden filed a reply. Defendant TransCor has not filed any brief pursuant to the July 30, 1998 order.

The matter was originally set for oral argument which was later vacated. Thereafter, Defendants Goodman and ter Linden filed a supplemental brief to their Reply.

### III. *Factual Background.*

Under a contract for extradition transportation between TransCor and the Colorado Department of Corrections, ter Linden and Goodman, employees of TransCor, transported Gwynn from Oregon to Colorado in November 1993. The trip took 145 hours, and the route went through Oregon, California, Nevada, Utah, Wyoming, Idaho, and Colorado. Only about two hours of the trip were in Colorado. During the trip, Gwynn was under the custody and control of ter Linden and Goodman.

Gwynn asserts the van in which Defendants transported her was dangerous because ter Linden and Goodman drove with insufficient sleep and exceeded safe speeds, including on two specific occasions when they drove over 60 miles per hour over mountain passes in Oregon and California when the road was covered by black ice. She also claims she was provided with inadequate food during the trip.

In addition, Gwynn asserts ter Linden raped and sexually assaulted her repeatedly during the trip, and Goodman failed to report or prevent these assaults. Specific acts occurred in Caldwell, Idaho, Vale, Oregon, and at a rest stop in an unspecified state. Gwynn also states ter Linden fondled and assaulted her in every state through which he transported her.

At the end of the trip, ter Linden and Goodman delivered Gwynn to the custody of Jefferson County, Colorado. Gwynn spent approximately two years thereafter in Colorado. She currently lives in Oregon. Ter Linden, Goodman, and TransCor are all residents of Tennessee.

### IV. *TransCor's May 31, 1996 Motion to Dismiss*

In her response to the August 14, 1998 motion of Goodman and ter Linden, Gwynn requested clarification as to whether TransCor's brief in support of its motion to dismiss, filed May 31, 1996 would be considered by the court. My July 30, 1998 Order On Motion for Clarification stated I would determine Defendants' motions to dismiss *de novo* and would ignore all previously filed briefs and objections as well as all proceedings before, rulings and recommendations of the magistrate judge relating to the said motions. The order thus stated my unequivocal intention to determine the motions to dismiss *de novo* and to disregard all previously filed briefs. Because TransCor has not, since that order, filed a brief in support of its May 31, 1996 motion to dismiss, that motion is unsupported and is dismissed. I nevertheless, *sua sponte*, consider the issue of personal jurisdiction with regard to TransCor and find that personal jurisdiction exists.[1]

### V. *Defendants ter Linden's and Goodman's Motions to Dismiss.*

Defendants Jack ter Linden and Randy seek dismissal, arguing that venue is improper in Colorado; personal jurisdiction over Defendants is lacking in Colorado; service of process is insufficient; and the federal claims

---

1. Insofar as I grant in part Defendants' ter Linden and Goodman's motions to dismiss the § 1983 claim for failure to state a claim under

Fed.R.Civ.P. 12(b)(6), treated here as motions for summary judgment, I also enter partial summary judgment in favor of TransCor in this regard.

pursuant to 42 U.S.C. § 1983 fail to state a claim upon which relief may be granted.

### A. *Venue.*

Ter Linden and Goodman argue venue is improper in Colorado. Plaintiff has the burden to establish venue is proper in this district. *Ferrofluidics Corp. v. Advanced Vacuum Components, Inc.,* 789 F.Supp. 1201, 1206 (D.N.H.1992), *aff'd,* 968 F.2d 1463 (1st Cir.1992). Once venue is challenged, plaintiff must prove that it is proper by presenting specific facts to support the allegations. *Banque de la Mediterranee–France v. Thergen, Inc.,* 780 F.Supp. 92, 94 (D.R.I.1992). Plaintiff has the burden of establishing that venue is proper as to each claim and as to each defendant. *Jarrett v. North Carolina,* 868 F.Supp. 155, 158 (D.S.C. 1994).

Because jurisdiction is not based solely upon diversity of citizenship, a civil action "may ... be brought ... in ... (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred...." 28 U.S.C. § 1391(b). Under this provision, several districts may qualify as the location of substantial events. "The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as 'substantial' activities took place in A, too." David D. Siegel, *Changes in Federal Jurisdiction and Practice Under the New (Dec. 1, 1990) Judicial Improvements Act,* 133 F.R.D. 61, 71 (1991). Even if a more substantial portion of the activities giving rise to the claim occurred in other districts, venue is proper if the district the plaintiff chose had a substantial connection to the claim. *Setco Enters. Corp. v. Robbins,* 19 F.3d 1278, 1281 (8th Cir.1994).

Ter Linden and Goodman claim the alleged acts of the Defendants must be considered separately, i.e. Gwynn's § 1983 claim must be considered as several separate claims. Applying the "substantial portion" test Defendants argue venue is not proper for each of these claims. They maintain insufficient events leading to Gwynn's claim occurred in Colorado to make this district the proper venue: less than two hours of the 145 hour trip occurred in Colorado; none of the five alleged acts relating to the reckless driving portion of Gwynn's claim occurred in Colorado; none of the allegations concerning inadequate food occurred in Colorado; and a substantial portion of ter Linden's alleged sexual assaults did not occur in Colorado and no rape occurred in Colorado. Therefore, Defendants assert, Gwynn has not established a substantial portion of the events leading to her claim occurred in the state.

Gwynn argues "substantial" should not be interpreted quantitatively, but qualitatively, and should not depend upon the duration of the Defendants' physical presence in Colorado. She asserts the sexual assaults, granting of authority, and suffering of damages that occurred in Colorado support a finding that venue is proper here. Gwynn states ter Linden and Goodman were "peace officers" under TransCor's contract with the Colorado Department of Corrections and that the relevant Colorado statute can be seen to confer upon them the authority to enforce the laws of Colorado. C.R.S. 18–1–903(3)(1)(III) and (IV.5)(A) and 24–7–101. This, she argues, is a relevant circumstance bearing upon the issue of venue, as is her suffering the consequences of their acts in Colorado for two years. Ter Linden and Goodman deny they were "peace officers" of Colorado pursuant to the authority of Colorado law and, accordingly, were not acting under color of state law.

In determining whether the District of Colorado is the proper venue for this action, I consider which events gave rise to Gwynn's claim and whether a substantial portion of these events occurred in Colorado. Courts have resolved these issues by looking to the substantive law underlying the plaintiff's claim. For example, in *Merchants National Bank v. Safrabank,* 776 F.Supp. 538, 541 (D.Kan.1991), the district court found it was the proper venue for a RICO and securities fraud action because the defendant solicited the plaintiff and conducted many of its transactions with her in Kansas through the mail, even though their activities in California may have been more substantial. The events the court considers may include acts other than those of the Defendants. *See Setco Enterprises,* 19 F.3d at 1280 (finding venue proper in the district in which a bankruptcy court issued an order the defendant

violated, giving rise to a fraud claim, although the defendant's fraudulent acts occurred in other states). Also, courts have considered where the plaintiffs suffered the alleged harm when other events giving rise to the claim took place in the same district. *See Neufeld v. Neufeld,* 910 F.Supp. 977, 986 (S.D.N.Y.1996) (applying a similar provision in § 1391(a)(2)); *but see Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir.1995) (holding venue improper for a claim arising under the Lanham Act when the only events alleged to have occurred in the district related to plaintiff's damages).

The essential elements of any claim under § 1983 are that "the conduct complained of was committed by a person acting under color of state law," and the "conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

It is undisputed that TransCor contracted with the Colorado Department of Corrections to transport inmates and that TransCor and its employees ter Linden and Goodman were exercising authority pursuant to that contract when they transported Gwynn. Ter Linden and Goodman had custody of Gwynn and handed her over to the Colorado Department of Corrections. As such, they were essentially acting as prison guards for and as agents for the State of Colorado. In using this state power as a coercive force to further their alleged wrongful acts against Gwynn, these acts constituted action under color of state law. See, e.g., *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Bennett v. Pippin,* 74 F.3d 578, 579 (5th Cir.), *cert. denied,* — U.S. ——, 117 S.Ct. 68, 136 L.Ed.2d 29 (1996). Effectively granting ter Linden and Goodman the authority to act under color of Colorado law, was an essential, let alone substantial, event giving rise to Gwynn's claim.

According to Gwynn's affidavit, other events which occurred in Colorado were one or more alleged sexual assaults by ter Linden and Goodman's continuing failure to report or prevent the assaults. "[A]n inmate has a constitutional right to be secure in her bodily integrity . . . ." *Hovater v. Robinson,* 1 F.3d 1063, 1068 (10th Cir.1993) (citing *Alberti v. Klevenhagen,* 790 F.2d 1220, 1224 (5th Cir.1986)). Defendants emphasize the impossibility of ter Linden having committed rape in Colorado as he was driving at a high speed during the Colorado part of the trip. Although Gwynn does not claim she was raped by ter Linden in Colorado, she asserts he fondled and sexually assaulted her in every state, including Colorado. Because a sexual assault is a violation of bodily integrity, this event can form the basis for the second required element of a § 1983 claim. Goodman argues he was unable to report any alleged sexual assault that occurred in Colorado because ter Linden drove the entire time the van was in Colorado and did not stop the van in the state until Gwynn was delivered to the Colorado authorities. However, Goodman's alleged failure to prevent at least one alleged sexual assault in the state suffices, regardless of whether he was able to report this assault while in Colorado.

Because the events that allegedly took place in Colorado could support Gwynn's claim even without the events alleged to have occurred in other states, they form a substantial portion of the events giving rise to her claim. *See United States v. Hartbrodt,* 773 F.Supp. 1240, 1242 (S.D.Iowa 1991). In *Hartbrodt,* the government sought an injunction to stop alleged violations of the mail and wire fraud statutes. The defendant had mailed a total of 15 million postcards which the government claimed were devised as a scheme to defraud, 200,000 (1.3%) of which were mailed to Iowa. Because the mailing of even one postcard into the district could support the government's claim for an injunction, the court concluded the mailing of postcards into the district constituted a substantial part of the events giving rise to that claim. *Id.* at 1242–1243 (citing *Gachette v. Tri–City Adjustment Bureau,* 519 F.Supp. 311 (N.D.Ga.1981)). Similarly, if ter Linden sexually assaulted Gwynn only one time and Goodman failed to prevent or report it, Gwynn's claim would be supported sufficiently. Therefore, these events, coupled with the grant of authority under Colorado law to ter Linden and Goodman, constitute a sub-

stantial portion of the events giving rise to Gwynn's claim.[2]

*Cottman v. Transmission Systems, Inc.,* 36 F.3d 291 (3d Cir.1994), cited in the supplement to Defendants' reply, is distinguishable on its facts. That was a breach of contract, unfair competition, and Lanham Act case, where the court determined venue did not lie in a district where the individual defendant did not conduct his business and did not carry out any infringing activities. Here, by contrast, ter Linden's alleged sexual assaults and Goodman's continuing failure to report or prevent the assaults in Colorado do constitute infringing activities in this district.

Gwynn asserts only one federal claim for relief, violation of 42 U.S.C. § 1983. As part of this claim, she states in the Amended Complaint and by way of affidavit, that, in addition to the sexual assault violations, Defendants also violated her constitutional rights by unsafe driving and providing her with inadequate food. Ter Linden and Goodman seek to treat these latter violations as separate claims and argue that a substantial portion thereof did not occur in Colorado.

The allegations of dangerous driving and insufficient food do not constitute separate § 1983 claims but are further allegations in support of Gwynn's single federal claim. I have already determined that the grant of authority to ter Linden and Goodman to act as agents for the State of Colorado and the allegations as supported by Gwynn's affidavit concerning alleged sexual assaults by ter Linden and Goodman's continuing failure to report or prevent the assaults form a substantial portion of the events giving rise to her § 1983 claim. As such, Gwynn has shown that venue for trying the § 1983 claim against both ter Linden and Goodman is proper in the District of Colorado and I need not consider whether a substantial portion of the dangerous driving and insufficient food "claims" occurred in Colorado.[3]

**B.** *Personal Jurisdiction.*

▮ Defendants, residents of Tennessee, argue this court does not have personal jurisdiction over them. To establish that the court has personal jurisdiction over a nonresident defendant, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state, and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1074 (10th Cir.1995).

▮ The only provision of the Colorado long-arm statute, which could apply to this case provides that a person, either in person or by an agent, submits to the jurisdiction of the Colorado courts by engaging in "[t]he transaction of business within this state" or in "[t]he commission of a tortious act within this state." Colo.Rev.Stat. 13–1–124(1)(a) & (b). In enacting this statute, the Colorado legislature "intended to extend the jurisdiction of our courts to the fullest extent permitted by the due process clause of the fourteenth amendment to the United States Constitution." *Dwyer v. District Court,* 188 Colo. 41, 44, 532 P.2d 725 (1975). To satisfy due process, jurisdiction over a non-resident defendant may be exercised by Colorado courts if that defendant has certain minimum contacts with the state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (further quotations omitted).

▮ Goodman and ter Linden argue they do not have sufficient contacts with the state of Colorado to bring them within the reach of the Colorado long-arm statute, Colo. Rev.Stat. 13–1–124, or to satisfy the minimum contacts requirements of the Due Process Clause. Minimum contacts may be established in two ways. General jurisdiction

---

**2.** I need not decide on these facts, but I am inclined to the view that the contractual relationship granting authority to transport Colorado prisoners is sufficient in itself to support venue in Colorado. No other state would have a similar heightened interest in litigation arising as a consequence of the manner in which its policies are implemented.

**3.** Accepting that venue is proper, I address the allegations and evidence concerning unsafe driving and inadequate food below. I grant the motions to dismiss for failure to state a claim, treated here as motions for summary judgment, insofar as the § 1983 claim is based on unsafe driving and inadequate food.

lies when the defendant's contacts with the forum state are so systematic and continuous that the state may exercise personal jurisdiction over the defendant, even if the suit is not related to the defendant's contacts with the state. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996). Specific jurisdiction, based on a matter occurring in the forum state, exists when a defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Id.* at 1532 (further quotation omitted). Specific jurisdiction requires that the suit be related to the defendant's actions in the forum state. In either case, the exercise of jurisdiction must not "offend traditional notions of fair play and substantial justice." *International Shoe Co.*, 326 U.S. at 316, 66 S.Ct. 154.

■■■ Although TransCor has not field any brief pursuant to the July 30, 1998 order, I consider the issue of personal jurisdiction over it. TransCor has a contract with the Colorado Department of Corrections concerning the transport of inmates from other states to Colorado. This contract constitutes the transaction of business within the state and establishes the general jurisdiction requirement that contacts with the forum state are systematic and continuous. I therefore find this court has general jurisdiction over TransCor and do not consider the question of specific jurisdiction in relation to the corporation.

■■■ By contrast, nothing in the record indicates that either ter Linden or Goodman have systematic and continuous contacts with the state of Colorado. To establish personal jurisdiction over ter Linden and Goodman, Gwynn must show: 1) they purposely availed themselves of the privilege of acting in Colorado, or of causing important consequences in Colorado; 2) the cause of action arises from the consequences in Colorado of their activities; and 3) their activities or the consequences thereof have a substantial enough connection with Colorado to make the exercise of jurisdiction reasonable.

*See Van Schaack & Co. v. District Court*, 189 Colo. 145, 538 P.2d 425, 426 (Colo.1975). Goodman and ter Linden argue none of these requirements for jurisdiction has been met with respect to either of them. I disagree.

Goodman and ter Linden, acting as employees of TransCor, transported Gwynn from Oregon to Colorado. In so doing and, in transferring her custody to Colorado authorities, they acted under authority of Colorado law. After being so transferred, Gwynn spent the next two years in Colorado. Gwynn's affidavit supports her allegations that ter Linden sexually assaulted her in Colorado, that Goodman failed to report ter Linden's actions and was otherwise complicit in the sexual assault, and that Gwynn suffered harm as a result. Although Defendants deny these allegations, I resolve these disputed issues of fact in Gwynn's favor for the purposes of these motions.

I conclude, in transporting Gwynn to Colorado and delivering her to the Colorado authorities in the manner testified to in Plaintiff's affidavit, ter Linden and Goodman purposely availed themselves of the privilege of acting in Colorado, committed tortious acts in Colorado, and caused important consequences in Colorado, knowing that Gwynn would be incarcerated there.[4] Moreover, these acts and their consequences in Colorado make the exercise of personal jurisdiction over ter Linden and Goodman reasonable.

### C. *Service of Process.*

Defendants argue the Amended Complaint should be dismissed as service of process is ineffective because this court lacks personal jurisdiction over them. *See* Fed.R.Civ.P. 4(k)(1)(A). Because I conclude personal jurisdiction exists, I find service of process to be effective.

### D. *Failure to State a Claim under 42 U.S.C. § 1983.*

Ter Linden and Goodman argue Gwynn's claim pursuant to 42 U.S.C. § 1983 fails to

---

4. Because I find the alleged wrongs committed against Gwynn within Colorado satisfy the requirement of Colorado Revised Statutes § 13–1–124(1)(b), I need not address the issue of whether the delivery of Gwynn to the Colorado authorities by ter Linden and Goodman, on behalf of TransCor and pursuant to the contract with the Colorado Department of Corrections amounted to the transaction of business within Colorado under § 13–1–124(a).

state a claim upon which relief can be granted because: (1) neither the unsafe driving nor the inexpensive food allegations assert any injury or identify any Constitutional right violated; (2) ter Linden's sexual assaults were not committed under color of state law and do not constitute state action.

If, on a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given a reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). Ter Linden and Goodman produce evidence outside the pleadings which, they assert, demonstrates that Plaintiff received adequate food and has no claim under § 1983 for sexual abuse or harassment. Gwynn too, in opposing the motions, presents an affidavit and documents for consideration. Because I do not exclude these "matters outside the pleadings," I treat the motions to dismiss for failure to state a claim under 42 U.S.C. § 1983 as one for summary judgment.

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). In applying this standard, I construe the factual record and reasonable inferences therefrom in the light most favorable to the non-moving party. *See Abeyta v. Chama Valley Indep. Sch. Dist. No. 19*, 77 F.3d 1253, 1255 (10th Cir.1996).

(1) *Section 1983 claim based on allegations of sexual assaults* .

Defendants assert, even if the sexual assaults by ter Linden occurred as alleged, such actions were not committed under color of state law and do not constitute state action. Rather, they argue, such assaults would be purely private conduct, undertaken for purely private purposes.

Section 1983 creates a federal cause of action for damages to vindicate alleged violations of federal law committed by individuals acting "under color of state law." 42 U.S.C. § 1983. Thus, the only proper defendants in a Section 1983 claim are those who " 'represent [the state] in some capacity, whether they act in accordance with their authority or misuse it.' " *Gallagher v. "Neil Young Freedom Concert"*, 49 F.3d 1442, 1447 (10th Cir.1995) (quoting *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988)) (further quotation omitted).[5] " 'The traditional definition of acting under state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *Jojola v. Chavez*, 55 F.3d 488, 492–93 (10th Cir.1995) (quoting *West v. Atkins*, 487 U.S. at 49, 108 S.Ct. 2250).

As discussed in relation to venue, Ter Linden and Goodman had custody of Gwynn as agents and prison guards of the State of Colorado, pursuant to the contract between TransCor and the Colorado Department of Corrections. Viewing the evidence and reasonable inferences in the light most favorable to Gwynn, ter Linden sexually assaulted her throughout the trip and Goodman failed to prevent such assaults. In so doing, Defendants used the state power as a coercive force to further their wrongful acts against Gwynn. Such acts constitute action under color of state law. *See West v. Atkins*, 487 U.S. at 49, 108 S.Ct. 2250 ("a defendant in a § 1983 case acts under color of state law when he abuses the position given to him by the State."); *see also Bennett v. Pippin Jr.*, 74 F.3d at 589.

Defendants assert, because ter Linden's assignment was the safe transportation of Gwynn, rather than her sexual assault, the sexual assaults were not perpetrated in furtherance of any legitimate assigned state

**5.** Because in Section 1983 actions the statutory requirement of action "under color of sate law" is as broad as the Fourteenth Amendment's "state action requirement," we look to decisional law interpreting the "state action" requirement for guidance in deciding whether certain conduct was taken "under color of state law" for purposes of § 1983. *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir.1995).

task. In so doing, they misconstrue the requirement that, for an action to be committed under color of state law and to constitute state action, the abuse must be perpetrated in the performance of the actor's assigned tasks, rather than in furtherance of personal pursuits. *See Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). "Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it. If, as suggested, the statute was designed to embrace only action which the State in fact authorized, the words 'under color of any law' were hardly apt words to express the idea.'" *Id.*

Defendants cite *Thomas v. Cannon,* 751 F.Supp. 765 (N.D.Ill.1990) as being "on all fours with the present case." There a state agency, the City of Chicago, contracted with a private transportation company to provide transportation services. Cannon, an employee of the company, saw two girls waiting for a bus and encouraged them to get into the company vehicle, saying that he would drive them to their destination. After the girls entered the car, Cannon drove to a destination, produced a knife and attempted to rape them. The court held Cannon had not acted under color of state law as "the attempt to rape two young girls is not an act remotely related to the performance of his job," *id.* at 768, and the company itself was not liable under § 1983, as mass transportation was not an area "traditionally the exclusive prerogative of the State." *Id.* Here, by contrast, ter Linden was performing the very duties he was assigned, namely guarding and transporting Gwynn, when he allegedly violated her constitutional rights. But for the cloak of state authority which brought Gwynn under his exclusive control, ter Linden could not have performed the alleged sexual assaults. I therefore reject the argument that ter Linden's alleged sexual assaults were not committed under color of state law.

### (2) *Unsafe Transportation.*

Gwynn asserts in her Amended Complaint and in her affidavit that the TransCor van in which she was transported was driven at unsafe speeds in icy conditions and that the drivers drove for long distances with little sleep. In so subjecting her, Defendants endangered her well-being and safety and caused her to fear for her life. Gwynn claims these conditions violated her Eighth Amendment right against cruel and unusual punishment and her right to due process of law under the Fifth and Fourteenth Amendments.

Not every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A prison official violates the Eighth Amendment where the deprivation alleged is objectively "sufficiently serious" and the alleged act or omission results in the denial of "the minimal civilized measure of life's necessities." *Id.* A prison official cannot be liable under the Eighth Amendment for denying an inmate humane conditions of confinement, unless that official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837, 114 S.Ct. 1970. Gwynn's allegations as supported by her affidavit concerning the Defendants' unsafe driving practices do not rise to the level of an objectively sufficiently serious act or omission such as to deprive her of the minimal civilized measure of life's necessities so as to constitute a violation of the Eighth Amendment.

Nor does Defendants' alleged unsafe driving which caused Gwynn to be in fear of her life, rather than any alleged physical injury, constitute the high level of a " 'brutal and inhuman abuse of official power literally shocking to the conscience' necessary to constitute a due process violation." *See Abeyta v. Chama Valley Indep. Sch. Dist. No. 19,* 77 F.3d 1253, 1257–58 (10th Cir.1996) (quoting *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir. 1980)). Accordingly, the allegations in the Amended Complaint and Gwynn's affidavit are insufficient to support a substantive due process claim under the Fifth and Fourteenth Amendments. *See id.* at 1257–58.

### (3) *Inadequate Food.*

As part of her § 1983 claim, Gwynn alleges she was not provided with adequate food and water during the trip; that the only food provided to her was fast food, consisting

of small McDonald's or Arby's hamburgers or sandwiches; and that ter Linden and Goodman skimmed the excess of the food allowance not used for purchasing proper food for the prisoners. In her affidavit Gwynn repeats the allegations concerning fast food and adds that ter Linden coerced her into giving him her food so that he or Goodman could keep the money allocated for her food. Gwynn also states ter Linden and Goodman made her sign her name to the TransCor forms which indicated that she received food, even though she had not done so.

In support of their motions to dismiss, treated here as motions for summary judgment, ter Linden and Goodman attach TransCor's records reflecting that Gwynn signed forms indicating that she received regular meals during her trip. The forms reflect that ten of the nineteen meals Gwynn received during the trip were in various jails in which she was housed during stops, rather than by ter Linden or Goodman. Nor does Gwynn allege that she suffered harm because of the inadequate food provided by Defendants. *See Glover River Org. v. United States Dep't of Interior,* 675 F.2d 251, 253 (10th Cir.1982) (holding a plaintiff has no standing to bring a claim, unless she alleges "a distinct and palpable injury" to herself that "was the consequence of the defendants' action, or that prospective relief will remove the harm").

Because it is undisputed that many meals Gwynn received were from jails, rather than from ter Linden and Goodman, and absent any evidence of palpable harm in this regard, summary judgment is appropriate on the § 1983 claim insofar as it is based on allegations of inadequate food. The facts alluded to, however, may well be relevant evidence in connection with the remaining claims.

### VI. *Conclusion.*

For the aforesaid reasons, I deny TransCor's Motion to Dismiss filed on May 31, 1996; Goodman and ter Linden's motions to dismiss on the grounds of improper venue, lack of personal jurisdiction, or ineffective service of process. I deny Goodman and ter Linden's motions to dismiss for failure to state a claim under 42 U.S.C. § 1983, treated here as motions for summary judgment insofar as such claim is based on alleged sexual assaults and failure to prevent or report such assaults, but grant the motions insofar as such claim is based on alleged unsafe transportation and inadequate food. Accordingly,

IT IS ORDERED THAT TransCor's Motion to Dismiss filed on May 31, 1996 is DENIED;

IT IS FURTHER ORDERED THAT Defendants' ter Linden's and Goodman's motions to dismiss based on lack of venue, lack of personal jurisdiction, and insufficient service of process are DENIED;

IT IS FURTHER ORDERED THAT Defendants' ter Linden's and Goodman's motions to dismiss the 1983 Claim for failure to state a claim under Rule 12(b), treated here as motions for summary judgment are DENIED insofar as the § 1983 claim is based on allegations of sexual assault and failure to prevent or report such assaults and GRANTED insofar as the § 1983 claim is based on allegations of unsafe transportation and inadequate food;

IT IS FURTHER ORDERED THAT partial summary judgment is entered against the Plaintiff and in favor of all three Defendants on the § 1983 claim insofar as it is based on allegations of unsafe transportation and inadequate food.

IT IS FURTHER ORDERED THAT this case is set for a Scheduling conference on **Tuesday, November 24, 1998 at 10 a.m. in Courtroom C–401.** The parties shall submit a stipulated Amended Scheduling and Discovery Order on or before November 17, 1998.