1 F.3d 1063
 Jerrie HOVATER, Plaintiff-Appellee,
v.
Tommie ROBINSON; Sedgwick County Board of County
Commissioners, Defendants,
and
Mike Hill, individually and in his official capacity as
Sheriff of Sedgwick County, Defendant-Appellant.
 No. 92-3230.
 United States Court of Appeals,
Tenth Circuit.
 July 27, 1993.
 
 Edward L. Keeley (Alan L. Rupe with him on the briefs) of Alan L. Rupe Law Offices, P.A., Wichita, KS, for defendant-appellant Hill.
 Thomas M. Warner, Jr., of Pullman & Warner, Chartered, Wichita, KS, for plaintiff-appellee Hovater.
 Before SEYMOUR, RONEY,* and MOORE, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 Jerrie Hovater brought this suit against officials of Sedgwick County under 42 U.S.C. Sec. 1983 (1988) alleging a violation of her constitutional rights under the Eighth and Fourteenth Amendments. Ms. Hovater alleges that while an inmate at the Sedgwick County Jail, she was sexually assaulted by defendant Tommie Robinson, a detention officer at the jail. She asserts that defendant Mike Hill, Sheriff of Sedgwick County, and defendant Board of Sedgwick County Commissioners are responsible for the constitutional violations due to their failure to properly protect her and their failure to supervise and train jail employees. Defendant Hill moved for summary judgment based on qualified immunity. The district court denied the motion. Mr. Hill appeals, and we reverse.
 
 I.
 
 2
 The sexual assault allegedly occurred on the third floor of the Sedgwick County Jail ("the jail").[1] A brief description of the layout and policies of the jail is helpful to determine the liability of those involved. The jail houses both male and female inmates. The female inmates are housed on the fourth floor. Within the secure portion of the third floor, there is a medical clinic, five attorney-inmate visitation rooms, and a combination chapel/library. Sheriff Hill was, at all relevant times, in charge of the jail. He supervised over two hundred employees, of whom approximately eighty worked in the jail.
 
 
 3
 Tommie Robinson was hired by Sheriff Hill's predecessor and began employment in January 1985. Mr. Robinson was certified as eligible by the Sedgwick County Civil Service Board. He completed sixty-seven hours of training and was given high evaluations by his supervisors during his employment. Prior to the alleged sexual assault of Ms. Hovater, no female inmate had complained of sexual misconduct by Mr. Robinson or any other detention officer. Mr. Robinson was assigned to the third floor area. His primary duty was to escort inmates between the elevator and the appropriate rooms.
 
 
 4
 Ms. Hovater was arrested on April 7, 1988 and charged with driving under the influence of alcohol and other related traffic offenses. She pled guilty as charged and was incarcerated at the Sedgwick County Jail to serve a sentence of one year and thirty days. On June 7, 1988, Mr. Robinson called Ms. Hovater to the third floor to straighten the books in the library. While in the library, Ms. Hovater alleges that Mr. Robinson made a sexual advance, sexually propositioned her, and told her he would call her down the next day. She did not inform anyone within the Sheriff's Department of this incident but did tell her boyfriend during a phone call that night. Early the next day, Mr. Robinson called Ms. Hovater to the third floor. She alleges that Mr. Robinson forcibly sodomized her in the chapel/library. She returned to the fourth floor and did not mention the incident to anyone. After lunch on the same day, Mr. Robinson called Ms. Hovater to the third floor again. She told the fourth floor officer that she did not want to go but gave no reason. On the elevator, Ms. Hovater told the elevator operator that Mr. Robinson had made sexual advances toward her. After delivering Ms. Hovater to the third floor, the elevator officer contacted a supervisor immediately. Due to a class in the chapel/library, Mr. Robinson sent Ms. Hovater back to the fourth floor but said he would call her down later. Ms. Hovater again told the elevator operator that Mr. Robinson had made advances toward her. By this time, an investigation had begun. On June 9, Sheriff Hill placed Mr. Robinson on probation. Mr. Robinson later resigned.
 
 
 5
 Ms. Hovater filed this suit against Sedgwick County, Mr. Robinson, and Sheriff Hill in his individual and official capacities, alleging violations of her constitutional rights under the Eighth and Fourteenth Amendments to be protected from harm perpetrated by jail guards and to be secure in her bodily integrity. Specifically, she alleges that defendants are responsible
 
 
 6
 for implementing a de facto policy and custom of allowing defendant Robinson to have unsupervised access and custody of female inmates over an extended period of time with deliberate indifference to the consequences, for failure to train the detention officers to prevent the policy and custom from occurring in the first place, for failure to supervise and protect.
 
 Aplee. Br. at 9.[2]
 
 7
 The policies and procedures which govern operation of the jail were revised in 1986 and set forth in a new Policy and Procedure Manual (the manual). Captain Ed Pavey was responsible for drafting the manual. He gathered information from several sources, including manuals from various jails throughout the country, the Kansas Jail Advisory Standards, and previous unwritten policies. Aplt. App., vol. II, at 353-55. This information formed the basis of the manual. One policy relevant here provides that a female detention officer, if available, would escort a female inmate moved within the jail. Id., vol. III, at 646. If a female officer was not available, two male detention officers were to escort a female inmate. Id. Ms. Hovater alleges that this procedure was not followed. She also asserts that Mr. Robinson "developed a practice of ... call[ing] the fourth floor detention officer and request[ing] that certain female inmates be delivered to his care and custody on the third floor." Aplee. Br. at 5. Ms. Hovater contends this practice violated jail policy in a number of ways. First, Mr. Robinson violated jail policy by calling Ms. Hovater to the third floor. The professional visitation clerk was the jail employee responsible for the movement of inmates to and from the third floor. Second, straightening the library was a task assigned only to male inmates who were trustees. Third, in contradiction to the manual, once on the third floor, the female inmate was left in the supervision of Mr. Robinson. Ms. Hovater contends these violations were carried out with the "knowledge and acquiescence" of the three female staff members on the third floor. Id. at 5-6. In fact, defendants admit that the normal "procedure was not followed in the small third floor area of the Jail because video cameras monitored the hallways and three female staff members worked in that area." Aplt. Br. at 9-10.[3] Although the manual required only one detention officer on the third floor, the Sheriff's department did not employ a sufficient number of female officers to permanently assign a female officer on the third floor. Id.
 
 
 8
 Defendants Hill and Sedgwick County moved for summary judgment. Sheriff Hill asserted the defense of qualified immunity. The district court denied the motion. The court found no evidence that Sheriff Hill had actual knowledge of Mr. Robinson's violations of the policies. However, the court held Sheriff Hill had "constructive notice that Robinson, a single male officer, had unsupervised care and custody of female inmates.... It is apparent to this court that Sheriff Hill and Sedgwick County were aware that the very injury which Hovater allegedly suffered was likely to result when a single male officer had unsupervised care and custody of a single female inmate." Aplt. App. at 150. Sheriff Hill appeals the denial of qualified immunity, arguing that the district court did not apply the correct legal principles.
 
 II.
 
 9
 "We review summary judgment decisions involving a qualified immunity defense somewhat differently than other summary judgment rulings." Hannula v. City of Lakewood, 907 F.2d 129, 130 (10th Cir.1990). Once a defendant raises the defense of qualified immunity, the plaintiff bears the burden of establishing that the defendant has violated clearly established law. Id. at 131. Courts have placed this burden on the plaintiff because qualified immunity is "intended to protect the defendant from the burdens associated with trial." Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 645 (10th Cir.1988). To meet her burden, a plaintiff must demonstrate a "substantial correspondence between the conduct in question and prior law ... establishing that the defendant's actions were clearly prohibited." Hannula, 907 F.2d at 131. If the plaintiff meets this burden, then the defendant "as the movant in a motion for summary judgment bears the normal burden of showing that no material issues of fact remain that would defeat his or her claim of qualified immunity." Pueblo Neighborhood Health Centers, 847 F.2d at 646. See also Hannula, 907 F.2d at 131.
 
 
 10
 Sheriff Hill contends that his conduct must be reviewed under the "malicious and sadistic" standard set forth in Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1084-85, 89 L.Ed.2d 251 (1986). We disagree. The proper standard for an Eighth Amendment claim based on conditions of confinement, such as the present claim, is "deliberate indifference." Berry v. City of Muskogee, 900 F.2d 1489, 1495 (10th Cir.1990). Under this standard, "an official or municipality acts with deliberate indifference if its conduct (or adopted policy) disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." Id. at 1496. See also Helling v. McKinney, --- U.S. ----, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (applying deliberate indifference standard to inmate's Eighth Amendment claim based on conditions of confinement). Deliberate indifference requires "a higher degree of fault than negligence, or even gross negligence." Berry, 900 F.2d at 1495 (citing City of Canton v. Harris, 489 U.S. 378, 388 & n. 7, 109 S.Ct. 1197, 1204 & n. 7, 103 L.Ed.2d 412 (1989)). The "mere fact that an assault occurs ... does not establish the requisite indifference to a prisoner's constitutional rights." Zatler v. Wainwright, 802 F.2d 397, 403 (11th Cir.1986).
 
 
 11
 "As a threshold matter of law, we must first decide whether [Ms. Hovater] could have suffered, at the hands of corrections officials, any deprivation of [her] constitutional rights under the due process clause of the Fourteenth Amendment and the cruel and unusual punishments clause of the Eighth Amendment." Harris By and through Harris v. Maynard, 843 F.2d 414, 415 (10th Cir.1988). Under the facts alleged by Ms. Hovater, we must determine whether Sheriff Hill disregarded an obvious risk to the safety of female inmates by allowing a single male guard to have custody of a female inmate absent any indication that the guard would assault her. The district court framed the issue in the same way. "The issue is not whether Sheriff Hill and Sedgwick County had notice of prior incidents of sexual misconduct between Robinson and female inmates. Rather, the issue is that Robinson frequently had sole custody and care of unsupervised female inmates." Aplt. App. at 151. Thus, in order to determine that a constitutional violation could have occurred, we must conclude that a male guard having sole custody of a female inmate creates such a risk to her safety that it constitutes a violation of the Eighth Amendment's cruel and unusual punishment clause. We are unable to do so.
 
 
 12
 We first note that we were not able to locate any decisions which hold that guards of the same gender as the inmates are required by the Eighth Amendment. The majority of cases which address gender in the prison setting focus on the right to privacy. These cases often must balance the inmates' right to privacy and the guards' right to not be discriminated against in employment. See, e.g., Berl v. County of Westchester, 849 F.2d 712 (2d Cir.1988) (county liable under Title VII for refusing to consider two male guards for promotion to female unit of prison); Cumbey v. Meachum, 684 F.2d 712 (10th Cir.1982) (right to privacy violated where guards regularly watch inmates of the opposite sex engaged in personal activities such as undressing); Forts v. Ward, 621 F.2d 1210 (2d Cir.1980) (male guards not enjoined from duties requiring observation of female inmates where privacy rights of female inmates could be protected); Edwards v. Dep't of Corrections, 615 F.Supp. 804 (M.D.Ala.1985) (illegal discrimination where male guard not appointed shift commander at women's prison due to his gender). This conflict "has normally been resolved by attempting to accommodate both interests through adjustments in scheduling and job responsibilities for the guards." Smith v. Fairman, 678 F.2d 52, 55 (7th Cir.1982), cert. denied, 461 U.S. 907, 103 S.Ct. 1879, 76 L.Ed.2d 810 (1983).
 
 
 13
 One case involved the search of female inmates by male guards. In Jordan v. Gardner, 986 F.2d 1521 (9th Cir.1993) (en banc), the Ninth Circuit held that clothed body searches of female inmates performed by male guards violated the Eighth Amendment. The prison had instituted a policy of random searches of inmates to detect contraband. In order to increase the number of searches performed, the prison officials allowed cross-gender clothed body searches. According to the training material, searches required "kneading," "pushing," and "squeezing" the bodies of the female inmates, including their crotch and breast areas. Id. at 1523. On the only day that the cross-gender searches were conducted before the lawsuit was filed, one female inmate "who had a long history of sexual abuse by men, unwillingly submitted to a cross-gender clothed body search and suffered severe distress: she had to have her fingers pried loose from bars she had grabbed during the search, and she vomited after returning to her cell block." Id.
 
 
 14
 The Ninth Circuit upheld the district court's determination that these random, suspicionless, cross-gender searches constituted an "infliction of pain" to which the defendants were deliberately indifferent. In reaching this decision, the district court had relied heavily upon evidence that demonstrated the psychological harm which likely would occur as a result of the searches. "Noting that many of the inmates at [the prison] have histories of sexual or physical abuse by men, the district court found that physical, emotional, and psychological differences between men and women 'may well cause women, and especially physically and sexually abused women, to react differently to searches of this type than would male inmates subjected to similar searches by women.' " Id. at 1525 (citations omitted). Eighty-five percent of the inmates had histories of serious abuse including rapes, molestations, beatings, and slavery. The court was persuaded that these women had "particular vulnerabilities that would cause the cross-gender clothed body searches to exacerbate symptoms of pre-existing mental conditions." Id. at 1526. Further, the defendants had notice of these pre-existing conditions. One of the defendants "was urged by members of his own staff not to institute cross-gender clothed body searches due to the psychological trauma which many inmates likely would suffer." Id. at 1528. The court held that the defendants were deliberately indifferent under the Eighth Amendment standard because they implemented the cross-gender searches knowing of the likelihood of harm and in the absence of the necessity for security purposes.
 
 
 15
 The Southern District of New York specifically discussed the right of an inmate to have a guard of the same gender in United States ex rel. Wolfish v. Levi, 439 F.Supp. 114 (S.D.N.Y.1977), aff'd on other grounds, 573 F.2d 118 (2d Cir.1978), rev'd sub nom. Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The inmates there argued that the assignment of a guard of the opposite sex creates " 'the danger of ... sexual relations, possibly without consent, between staff and inmates' as well as other 'unwelcome intrusions' into inmates' privacy." Id. at 159 (citations omitted). The court refused to order the segregation of correctional personnel to match the sexes of the inmates. In so holding, the court said:
 
 
 16
 There is no evidence at all on the present record of sexual abuse of inmates by correctional personnel. The court cannot proceed in this aspect on rumors or on judicial notice. If we did, we could scarcely emerge from the maze to which the topic leads. After all, the main literature and experience of sexual assaults in prison does not treat heterosexual misbehavior. Were assault the main concern, having guards and prisoners of the same sex would not solve the problem.
 
 
 17
 Id.
 
 
 18
 The Jordan and Levi decisions are the most analogous cases to the issue before us. Under the escort policy here, unlike the policy in Jordan, we are not faced with physical contact between the guards and inmates. Moreover, the record in Jordan was replete with evidence to support the risk of harm likely to result from the policy. Like the record in Levi, there is no evidence in the present case of an obvious risk that male detention officers will sexually assault female inmates if they are left alone.
 
 
 19
 We agree with Ms. Hovater that an inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards. Alberti v. Klevenhagen, 790 F.2d 1220, 1224 (5th Cir.1986). We also acknowledge that a prison official's failure to protect an inmate from a known harm may constitute a constitutional violation. Santiago v. Lane, 894 F.2d 218, 225 (7th Cir.1990). The district court found evidence of a risk of harm because the jail's manual included procedures to keep a male guard from having unsupervised care of a female inmate. The court accepted Ms. Hovater's argument that it was "apparent" Sheriff Hill knew of the risk to female inmates in custody of male guards because the jail had a policy intended to prevent the harm. That asserted rationale for the policy is not supported by any evidence in this record. Sheriff Hill argues on appeal that the policy was adopted to protect male guards from false complaints. Indeed, there is some evidence in the record which supports Sheriff Hill's argument. The National Sheriffs' Association's Jail Officer's Training Manual provides: "Unless it is absolutely necessary, a male officer should never enter a female inmate's cell unless he is accompanied by a witness--preferably a female officer." Aplee. Supp. App., vol. III, at R-522 (emphasis added). "To protect himself, the male officer should never enter a woman's cell alone, with the exception of true emergencies. He should summon another officer, preferably a female officer or, if there are no female officers on duty, a supervisor." Id. (emphasis added). Thus, the mere existence of the policy at issue does not establish an obvious risk that females left alone with male guards are likely to be assaulted.
 
 
 20
 Sheriff Hill had no knowledge that Mr. Robinson was a threat to the female inmates. Any known harm could stem only from the mere fact of Mr. Robinson's gender. To find a harm present in these circumstances would, in effect, require the conclusion that every male guard is a risk to the bodily integrity of a female inmate whenever the two are left alone. There is absolutely no evidence in this record to support that conclusion. A constitutional violation may not be established by a reliance upon unsupported assumptions.[4] Had Sheriff Hill possessed information that Mr. Robinson as an individual posed a threat to the safety of female inmates, our decision would be different. We hold that Ms. Hovater has failed to meet her burden of establishing a constitutional violation.[5] Sheriff Hill is therefore entitled to qualified immunity. Hannula, 907 F.2d at 131.
 
 
 21
 The judgment of the district court is REVERSED.
 
 
 
 *
 The Honorable Paul H. Roney, Senior United States Circuit Judge for the United States Court of Appeals for the Eleventh Circuit, sitting by designation
 
 
 [1]
 Mr. Robinson denies the assault occurred. For the purposes of his summary judgment motion, however, defendant Hill assumes Ms. Hovater's version of the assault is correct. Aplt. Br. at 12-13
 
 
 [2]
 Ms. Hovater also brought pendent state law claims which are not at issue here
 
 
 [3]
 The video cameras monitored the hallways only, not the individual rooms
 
 
 [4]
 Ms. Hovater argues that she has established a violation by Sheriff Hill's failure to follow his own policies. However, a failure to adhere to administrative regulations does not equate to a constitutional violation. Davis v. Scherer, 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.")
 
 
 [5]
 Our determination that the policy at issue here does not establish a constitutional violation is dispositive of Ms. Hovater's claim against Sheriff Hill for failure to train