Pamela SMITH, an individual,
Plaintiff,

v.

Don COCHRAN, an individual,
Defendant.

No. 00–CV–35C.

United States District Court,
N.D. Oklahoma.

May 9, 2001.

N. Kay Bridger-Riley, Eric Anthony Mareshie, Charles McSoud, Bridger-Riley Stallard & Assoc., PC, Tulsa, OK, for Plaintiff.

Charles K. Babb, Office of Attorney General, Oklahoma City, OK, for Dept. of Public Safety, Ed Spencer.

Lisa Tipping Davis, Office of Attorney General, Oklahoma City, OK, for Don Cochran.

## AMENDED ORDER

H. DALE COOK, Senior District Judge.

Before the Court is the motion for summary judgment filed by the defendant and counter-motion for partial summary judgment filed by plaintiff pursuant to Fed. R.Civ.P. 56. Both parties contend that there exists no genuine issue of material facts and that they are both entitled to summary judgment as a matter of law.

On January 13, 2000, plaintiff Pamela Smith ("Smith") filed the present action in United States District Court in the Northern District of Oklahoma against State of Oklahoma, *ex. rel,* Department of Public Safety, Don Cochran, in both his individual and official capacity, and Ed Spencer, in both his individual and official capacity.[1] The suit was filed under federal question

---

1. The Court notes that since the original complaint was filed, both parties have stipulated

jurisdiction, pursuant to 28 U.S.C. § 1331, and pendent jurisdiction for a state claim. The requested relief arises under 42 U.S.C. § 1983, and the supplemental jurisdiction of this Court.

On March 15, 2001, Cochran filed his motion for summary judgment. Smith filed her response on April 5th and filed a counter-motion for partial summary judgment contemporaneously on that date.[2] Eleven days later, Cochran filed a reply to his motion for summary judgment and a response to Smith's counter-motion for summary judgment.[3] All materials regarding defendant's motion for summary judgment have now been submitted, and the matter is ripe for ruling.

### Undisputed Statement of Facts

1. Smith was an inmate in the custody of the Oklahoma Department of Corrections ("DOC") from August 1996 until September 2000.

2. From September 1997 to August 1998, Smith was housed at the Tulsa Community Correction Center ("TCCC").

3. DOC entered into a Prisoner Works Project Contract ("PWP") wherein trustees / inmates at the TCCC would be provided to the Oklahoma Department of Public Safety ("DPS") to perform janitorial services at the two drivers license examination centers in the Tulsa Area.

4. The PWP was initiated in 1993, and renewed each year thereafter.

5. The PWP provided that DOC has the ultimate responsibility for the security of prisoners and prisoners are deemed to be on trustee status and under the custody and control of the DOC.

6. While Smith was housed at TCCC, Smith was a trustee / inmate allowed to leave TCCC during the day and perform certain assignments. Smith was assigned to an "outside" job at Wells Fargo picking up trash during September and October of 1997. Due to medical problems DOC reassigned Smith as a trustee at DPS. From November 1997 to August 1998, she performed janitorial duties for DPS.

7. As a janitor / trustee, Smith performed janitorial duties at the DPS facilities located in Jenks and Northside Tulsa, although she performed the majority of her duties at the Northside facility.

8. Ed Spencer, a Senior Drivers' License Examiner for DPS and supervisor over both facilities, transported Smith from TCCC to the DPS facility each day where he wanted her to perform janitorial duties. Normal work time for the janitors / trustees was Monday through Friday, between the hours of 8:00–8:30 a.m. until 4:00–5:00 p.m.

9. Cochran was an employee of DPS as driver's license examiner from December 1987 until February 1999 when he voluntarily resigned.

10. From November 1997 until June of 1998, Cochran was primarily located at the Northside Tulsa facility.

---

that all parties except for Don Cochran, in his individual capacity, should be dismissed from the lawsuit.

**2.** The Court views Smith's "Counter–Motion for Partial Summary Judgment on the Issue of Qualified Immunity" as merely a response to Proposition II of Cochran's Motion for Partial Summary Judgment regarding quali-

fied immunity; and thus, only one motion is before the Court.

**3.** The Court views Cochran's "Response to Plaintiff's Counter Motion" as merely part of the reply to his original "Motion for Partial Summary Judgment."

11. Among the rules provided to DPS, were that inmate/trustees were to have no alcohol, no drugs, no sex, no use of the telephone without permission, no visitors, and no leaving the DPS facility, other than to return to the TCCC.

12. Cochran allowed Smith preferential treatment to include telephone privileges, visitors, shopping, and family visits. Cochran transported Smith to homes of friends and family and to go shopping.

13. Previously, a driver's license applicant made a complaint against Cochran for his personal comments.

14. From approximately June until August, Smith alleges that Cochran commented to her regarding the size of her breasts. Smith also alleges that shortly thereafter Cochran told Smith she needed to do something to prove he could trust her.

15. Although Cochran denies ever having a sexual relationship whatsoever with Smith, she alleges that within the first two weeks she was a trustee at the Northside facility, that she engaged in sexual intercourse with Cochran.

16. Smith alleges that at least once a month, from November of 1997 until May of 1998, Smith engaged in sexual intercourse and fellatio with Cochran.

17. Smith alleges that if she refused to perform sex with Cochran or reported his conduct, she would have lost her special privileges and would have been removed from PWP.

18. Smith alleges that Cochran gave Smith a condom for the subsequent intention of having sex in January of 1998 and three months later raped Smith with a salt shaker.

19. Smith alleges that on two occasions prior to these events, Cochran forced other female inmate/trustees to show him their naked bodies.

20. During his time as an employee at DPS, Cochran knew that it was a crime to have sex with an inmate.

21. In August of 1998, Smith was transferred to Eddie Warrior Correctional Center (EWCC) in Taft, Oklahoma and was housed there until September 2000.

22. Since her release from EWCC, Smith sought both medical and psychological counseling.

### Allegations of the Parties

Smith contends that while working for DPS as an inmate, she was exposed to comments of a sexual nature, and sexually assaulted and battered on numerous occasions by Cochran. She maintains that Cochran used his position of authority, as a DPS employee, to engage in sexual intercourse and fellatio with Smith. Smith further alleges that she reported to DPS supervisor, Ed Spencer, that Cochran had been making salacious remarks to Smith and in one instance, had given Smith a condom for later use. Cochran denies any wrongdoing and specifically denies ever having any sexual relationship with Smith.

Smith asserts that Cochran violated her right to liberty and due process of law under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, giving rise to a 42 U.S.C. § 1983 (" § 1983") claim.

### Standard of Review

In considering a motion for summary judgment, the Court "has no real discretion in determining whether to grant summary judgment." *U.S. v. Gammache,* 713 F.2d 588, 594 (10th Cir.1983). The Court must view the pleadings and documentary

evidence in the light most favorable to the nonmovant, *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 527–28 (10th Cir.1994), and summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Akin v. Ashland Chemical Co.,* 156 F.3d 1030, 1034 (10th Cir.1998). Further, " 'the moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment.' " *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991) (quoting *Ewing v. Amoco Oil Co.,* 823 F.2d 1432, 1437 (10th Cir.1987)). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991). The "party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted).

### 42 U.S.C. § 1983

As an initial matter, the Court turns to Cochran's contention that Smith's claims are "vague and conclusory without providing substance of the right." *See* Cochran's Motion for Summary Judgment, 7. Cochran argues that Smith's failure to plead with particularity in regard to the constitutional deprivation, that serves as the underlying basis for the § 1983 claim, should justify a summary judgment in his favor. The Court views Cochran's argument as a reference to the "heightened pleading" requirement traditionally used in § 1983 claims with qualified immunity affirmative defenses.[4] However, the Tenth Circuit has since abolished the use of this requirement as a result of the Supreme Court's decision in *Crawford–El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). *See Currier v. Doran, et. al.,* 242 F.3d 905 (10th Cir.2001). The Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). Having complied with this requirement, Smith provided Cochran with the required fair notice of what her claim was and the ground on which it rested. *See id.* Thus, the court finds Smith's pleadings sufficient in accordance with the Federal Rules.

■■ Smith's complaint asserts a federal claim for violation of 42 U.S.C. § 1983, and two pendent state causes of action, specifically a sexual battery claim, and intentional infliction of emotional distress claim. The purpose of § 1983 is to deter state actors from using their positional authority to deprive individuals of their constitutionally guaranteed rights and to provide a remedy to victims if such deterrence fails. *See Wyatt v. Cole,* 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504

---

4. *See Breidenbach v. Bolish,* 126 F.3d 1288, 1292 (10th Cir.1997) (explaining that the "heightened pleading" requirement went beyond traditional notice pleading to requiring a demonstration of all of the factual allegations necessary to assert that a defendant violated plaintiff's constitutional rights).

(1992). Section 1983 is not a source of substantive rights, but instead merely provides a vehicle for vindicating federal rights conferred elsewhere. *See Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

■ To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived her of a right secured by the Constitution or laws of the United States. *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). Cochran argues that Smith's § 1983 claims must fail because he is not a state actor and did not operate under color of state law, which is a jurisdictional requisite for a § 1983 action. *See Polk County v. Dodson*, 454 U.S. 312, 315, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), *Pino v. Higgs*, 75 F.3d 1461, 1464 (10th Cir.1996). In this respect, Cochran contends that Smith cannot satisfy any of the four tests identified by the Supreme Court and Tenth Circuit for use in determining whether challenged conduct occurs under color of state law.[5]

It is well settled that for a § 1983 claim to exist, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). In this case, Smith originally alleged a violation of her rights under the Fourth, Fifth, Eighth[6] and Fourteenth Amendments of the United States Constitution and a violation of state law. Cochran argues that no constitutional violation occurred and that a state law violation cannot stand as the basis for a § 1983 violation.

*Constitutional or Federal Law Violation*

In the motion for summary judgment, response, and reply briefs, both parties argue about whether the conduct rises to the level of an Eighth Amendment violation. Although Smith invoked the Fourth, Fifth, and Fourteenth Amendments in her complaint and never attempted to frame arguments concerning them, "her claim remains bounded by the Eighth Amendment, the 'explicit textual source of constitutional protection,' *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) in the prison context." *Adkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir. 1995). The allegations of cruel and unusual punishment and of excessive force implicate prisoners' rights under the Eighth Amendment of the Constitution. *See Cain v. Rock*, 67 F.Supp.2d 544 (D.Md.1999). This individual right governs both the treatment prisoners receive while incarcerated and the conditions of confinement, *See Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), requiring humane conditions and an environment of safety.[7] *See Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

■ Although the Eighth Amendment's prohibition against cruel and unusual pun-

---

**5.** These tests are known as 1) the nexus test, 2) the symbiotic relationship test, 3) the joint activity test, and 4) the public function test. *See Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir.1995).

**6.** The alleged violations of the Fourth and Eighth Amendments are applied via the Fourteenth Amendment.

**7.** *See Carrigan v. Davis*, 70 F.Supp.2d 448, 454 (D.Del.1999) ("[s]exual conduct between prison guards and inmates destabilizes the prison environment by compromising the control and authority of the guard over the inmate, compromising the inmate's health, security and well-being and creating tensions and conflicts among the inmates themselves").

ishment necessarily excludes from constitutional recognition de minimis uses of force, See Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir.1994), when an inmate establishes that the alleged sexual abuse was egregious and pervasive, a claim under the Eighth Amendment can be made. See e.g. Watson v. Jones, 980 F.2d 1165, 1165–66 (8th Cir.1992). In fact, an inmate may state an Eighth Amendment constitutional claim under § 1983 for sexual harassment if it was sufficiently harmful [8] and occurred with intent to harm the prisoner. See e.g. Beardsley v. Webb, 30 F.3d 524, 529 (4th Cir.1994); Pontarelli v. Stone, 930 F.2d 104, 113–14 (1st Cir.1991); Starrett v. Wadley, 876 F.2d 808, 814 (10th Cir.1989); Bohen v. City of East Chicago, Ind., 799 F.2d 1180, 1187 (7th Cir.1986).

■■ Two requirements must be met to properly show a violation of the Eighth Amendment. First, the alleged infliction must be sufficiently serious. Second, there exists a mens rea requirement, in that there must be a "culpable state of mind." In this instant case, this manifests itself as the government employee's deliberate indifference to a substantial risk of serious harm to the inmate. See Farmer, 511 U.S. at 834, 114 S.Ct. 1970. Courts have repeatedly recognized that because no legitimate law enforcement or penalogical purpose can be inferred by the sexual abuse by a prison official, the sufficiently culpable state of mind is present to violate the prisoner's constitutional rights. See Jordan v. Gardner et. al, 986 F.2d 1521, 1524–31 (9th Cir.1993), Boddie v. Schnieder, 105 F.3d at 861 (2d Cir.1997).

■ In this current case, Smith has alleged actions by Cochran that demonstrate the use of excessive force sufficiently prevalent to demonstrate a pattern which resulted in alleged injuries that are objectively "harmful enough" to implicate the Constitution. See Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), see also Farmer v. Brennan, 511 U.S. 825, 855, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The Court concludes that these alleged instances of sexual abuse would constitute a "deprivation which amounts to a wanton and unnecessary infliction of pain ... [physical and mental] ... which is so malicious that it violates contemporary standards of decency...." Women Prisoners v. District of Columbia, 877 F.Supp. 634, 664–65 (D.D.C.1994), vacated in part on other grounds, 899 F.Supp. 659 (D.D.C.1995).

Along with recognizing a constitutional violation of Eighth Amendment rights, the court recognizes an additional violation of federal law. 42 U.S.C. § 1983 "authorizes suits against State and local officials based upon federal statutory as well as constitutional rights." 122 Cong.Rec. 35122 (1976) (emphasis added). "A general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." United States v. Lanier, 520 U.S. 259, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432 (1997) (citation omitted).

This Court may look to available decisional law of the Tenth Circuit to ascertain whether federal law has been violated. In order to find a clearly established constitu-

---

8. Sufficiently harmful is defined as departing from "the evolving standards of decency that mark the progress of a maturing society."

Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958).

tional right, a district court must find binding precedent by the Supreme Court or its court of appeal. *See Lattany v. Four Unknown U.S. Marshals,* 845 F.Supp. 262 (E.D.Penn.1994).[9] Because "government officials are charged with knowledge of constitutional and statutory developments, including all available decisional law," *Gutierrez v. Municipal Court,* 838 F.2d 1031, 1048 (9th Cir.1988), Cochran is responsible for the Tenth Circuit's interpretation of constitutional law as it applies to the liberty interests of inmates. The Supreme Court has reiterated that "[i]nmates retain those First Amendment rights [and other constitutional rights] that are not inconsistent with [their] status as prisoner[s]." *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Following this line of reasoning, the Tenth Circuit held in *Hovater v. Robinson,* 1 F.3d 1063 (10th Cir.1993), that "an inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards." *Id.* at 1068. By interpreting the Constitution through the rubric of Supreme Court precedent, the Tenth Circuit's opinion established a constitutional deprivation in regard to prison guards and inmates. In the current case, Cochran acts as a de-facto guard[10] and is liable to her for the constitutional deprivation as interpreted by the Tenth Circuit Court of Appeals.

Although Smith argues in her complaint that Cochran violated her rights as protected by the state pursuant to 21 O.S. § 111(A)(7), violations of state law do not give rise to a § 1983 claim. *See Romero v. Board of County of Lake, State of Colo.,* 60 F.3d 702, 705 (10th Cir.1995), *Jones v. City and County of Denver Colo.,* 854 F.2d 1206, 1209 (10th Cir.1988), *see also Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Thus, in regard to her claim that Cochran violated this state statute, such does not independently deprive her of a right "secured by the Constitution and laws." 42 U.S.C. § 1983.

*"Under Color of State Law"*

Thus, the only question which the Court must address with regard to the § 1983 claim at this time is whether Smith properly alleges that defendant was a state actor or acting under color of state law[11] at the time of the alleged assaults. "Under Section 1983, liability attaches only to conduct occurring 'under color of law.' Ergo, the "only proper defendants in a Section 1983 claim are those who 'represent [the state] in some capacity, whether they act in accordance with their authority or misuse it.' " *Gallagher,* 49 F.3d at 1447 (*quoting NCAA v. Tarkanian,* 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988)).

9. The Court notes that in an abnormal case, other courts' decisional law may clearly establish a principle of law, but these "decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *See Lattany,* 845 F.Supp. at 266, *see also K.H. v. Morgan,* 914 F.2d 846, 851 (7th Cir.1990)

10. In its holding concerning the application of qualified immunity, the Court discusses the applicability of Cochran's status as a constructive or de-facto guard.

11. *See United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941) ("[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law") (internal quotation omitted).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49, 108 S.Ct. 2250 (internal quotation omitted). The "conduct allegedly causing the deprivation of a federal right' must be 'fairly attributable to the State.'" *Gallagher*, 49 F.3d at 1447 (*quoting Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). Later in that same case, the Tenth circuit held:

> "In order to establish state action, a plaintiff must demonstrate that the alleged deprivation of constitutional rights was caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. In addition, the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* (internal quotation omitted).

█ Accepting Smith's allegations against Cochran as true for the purpose of the motion for summary judgment, the Court finds that Cochran, while serving as a DPS employee, "used the state power as a coercive force to further [his] wrongful acts against" Smith. *Gwynn v. Transcor America, Inc.*, 26 F.Supp.2d 1256, 1265 (D.Co.1998). Cochran had control of Smith as a DPS employee of the state, pursuant to a contract entered into between DOC and DPS. In fact, Smith has testified that she was not free to leave while working for DPS and .could be subject to punishment if she disobeyed the commands of the DPS supervisors. *See* Smith's deposition, 109–111, 167.

In order to do a proper evaluation one must examine "the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir.1995). "Acts of officers who undertake to perform their official duties are included whether they hew the line of their authority or overstep it." *Screws v. United States*, 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). In this case, the abuse, which allegedly occurred to Smith while working in a janitorial capacity, was perpetrated in the performance of Cochran's assigned tasks as a license examiner.

As a DPS employee, Cochran had the responsibility to ensure that rules and prohibitions proscribed by the DOC were adhered to at the DPS facilities by the inmates. Without his cloak of state authority, Cochran could not have performed the alleged sexual assaults." *See id., see also Terry v. Adams*, 345 U.S. 461, 469–70, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) (if a private actor is functioning as the government, he becomes the state for purposes of state action), *Gallagher*, 49 F.3d at 1456 ("If the state delegates to a private party a function 'traditionally exclusively reserved to the State,' then the private party is necessarily a state actor") (citations omitted).

The Court concludes that Cochran acted under color of state law in sexually abusing inmate Smith, finding that "a 'real nexus' exists between the activity out of which the violation occur[red]" *Doe v. Taylor Independent School District, et al.*, 15 F.3d 443, 452 n. 4 (5th Cir.1994), and his duties and obligations as a DPS employee. Based on the foregoing facts, Cochran, as a DPS employee, was acting under color of state law when interacting with Smith.

Even though he was not acting in his normal professional capacity as a license examiner, he still used his authority, with the required nexus to the state to carry out his plan of coercive sexual rendezvous and violated Smith's civil rights. *See West*, 487 U.S. at 46, 108 S.Ct. 2250. Thus, because Cochran is accused of depriving Smith of her federal constitutional right to bodily integrity and he did it under color of state law, Cochran would be in violation of 42 U.S.C. § 1983.

### Qualified Immunity

The doctrine of qualified immunity shields public officials performing discretionary functions from § 1983 liability for civil damages if their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would not have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), *Prager v. LaFaver*, 180 F.3d 1185, 1190 (10th Cir.1999). "In analyzing qualified immunity claims, we first ask if a plaintiff has asserted the violation of a constitutional right at all, and then assess whether that right was clearly established at the time of the defendant's actions." *Gehl Group v. Koby*, 63 F.3d 1528, 1533 (10th Cir.1995). To demonstrate that the law was clearly established, Smith must show that the alleged unlawfulness of Cochran's conduct was apparent in light of preexisting law.[12] *See Armijo v. Wagon Mound Pub. Schs.*, 159 F.3d 1253, 1260 (10th Cir.1998). "The contours of the

right[13] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* Thus, Smith has the burden to establish that the asserted right's contours are sufficiently clear, and if that burden is met then Cochran "bears the burden, as a movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity." *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir.1995) (internal quotation omitted).

█ Cochran's arguments contained in his answer and motion for summary judgment focus on whether consensual sex between an inmate and a non-custodial government employee is a violation of clearly established federal law. Although it is true that "[t]he Tenth Circuit has not previously determined whether a prison guard may raise consent as an affirmative defense to a § 1983 allegation of [excessive force], nor is the law clearly established elsewhere" *Giron v. Corrections Corporation of America*, 191 F.3d 1281, 1287 (10th Cir.1999),[14] this argument is simply not applicable to the case at bar. At no time in Smith's complaint did she claim that the alleged sexual contact was consensual, in fact she claims that the actions were forceful and rose to the level of rape by instrumentation, and otherwise. The Court finds that there are sufficient factual matters alleged to support her claim that she was forcefully sexually battered and raped by instrumentation to sustain her burden at this stage.

---

**12.** *See Currier v. Doran*, 242 F.3d 905 (10th Cir.2001) (holding that clearly established law is construed as Supreme Court or Tenth Circuit decisions on point or the clearly established weight of authority from other courts).

**13.** *See Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir.1995) (holding that the question of qualified immunity dovetails with the substantial inquiry in a § 1983 action in that both

depend on the specific contours of the constitutional right at issue).

**14.** *See also Doe v. Rains County Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir.1995) "suffered an actionable deprivation of her liberty interest in freedom from sexual abuse by persons wielding state authority."

Whether non-consensual sex in this capacity is a violation of clearly established federal law is a question of first impression for this Court. Guided by "contemporary standards of decency," *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the [United States Supreme] Court has previously addressed the minimal standards necessary to provide humane conditions of confinement, *See Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), and prison officials' duties to assure the constitutional rights and proper safety of inmates, *See Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Acknowledging this standard, the Tenth Circuit has held that a prison official's failure to protect an inmate from a known harm may constitute a constitutional violation. *See Hovater,* 1 F.3d at 1068. In that same case, the court clearly established federal law that "an inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards." *Hovater,* 1 F.3d at 1067.

In the case at bar, Cochran served as a government employee in the Department of Public Safety as a license examiner.[15] Although he did not hold the position of "prison guard or official," he served in an analogous role with similar duties.[16] While there are superficial differences between Cochran's actions of complying with the DOC regulations regarding inmates and the responsibilities of a guard, the similarities are more instructive than the differences. Standard duties of prison guards encompass care, security, and control of inmates. They are responsible for the implementation of prison policies and must ensure humane conditions of confinement and "take reasonable measures to guarantee the safety of the inmates." *See Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). *See Helling,* 509 U.S. at 31–32, 113 S.Ct. 2475, *Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990); *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In order to achieve this goal, guards must maintain constant surveillance of the inmate's movements and activities. This phenomenon of "control dichotomy ... [is nowhere] ... more pronounced than in the context of the special relationship between prison guards and prisoners." *Carrigan v. Davis,* 70 F.Supp.2d 448, 458 (D.Del.1999).

The coercive nature of these duties exert compelling pressures on inmates which undermine their free will. *See Fisher v. Goord,* 981 F.Supp. 140, 172 (W.D.N.Y. 1997) ("an inmate might feel compelled to perform sexual favors for correction officers in order to be on the officer's 'good side' ... which is ... quid pro quo behavior [that] is inappropriate, despicable and serves no legitimate penological purpose"). An inmate, by definition, relinquishes her liberty and submits herself to the control of guards and other officials in similar roles. Even in regard to a state governmental employee working with an inmate who has dominion over her free will, the same effect is created due to the inmate's inherent vulnerability as a ward of the state for which the employee works. In

---

**15.** The Court notes that "The [License] Examiner's Bureau may consist of both uniformed members of the Oklahoma Highway Patrol Division and nonuniformed classified employees of the Department of Public Safety both of whom may administer tests for the purpose of issuing driver's licenses...." *See* 47 O.S. 2–106.

**16.** *See* Websters Dictionary 516 (10th Edit. 1999) defining "guard" as one assigned to protect or oversee another.

this case, where a public works contract created institutional rules to which all DPS employees were required to adhere, the employees themselves represent state employee surrogate guards who are empowered to control the inmate's existence while the inmate performs labor in their facility. *See* Prisoners Public Works Project Contract. By reason of their significant engagement in performing the contract between DOC and DPS, these DPS surrogates perform the jobs for which the DOC officers are chartered.

The Court declines to adopt Cochran's argument that he had no supervisory duties, official or unofficial, over Smith during the time in question. *See* Cochran's deposition, 26–27. It should be inherently obvious to the casual observer that in order for Cochran to permit Smith to violate the rules and regulations that Cochran, himself, had been instructed to enforce, he would have had some form of authority, control, or supervisory powers over Smith. In fact, Cochran is alleged by Smith of not only allowing forbidden telephone privileges, shopping sprees, and family visits, but also of transporting Smith to stores, and the residence of friends and relatives. If Cochran had no authority over Smith, she could have acted on her own free will without having to be sexually molested in order to violate the regulations promulgated by the Department of Corrections.

Although the precise amount of actual authority, as exercised by Cochran over Smith, is neither admitted nor present in

the record, it is of no crucial relevance. The power possessed by state authority can either be actual or apparent authority.[17] The Tenth Circuit has held that the color of law test is one where the defendant's actual or apparent authority is combined with a "real nexus" between the conduct and his "badge of state authority." *David v. City and County of Denver*, 101 F.3d 1344, 1353 (10th Cir.1996), *see Jojola v. Chavez*, 55 F.3d 488, 492–93 (10th Cir. 1995) (holding that authority with which the § 1983 defendant is clothed may be actual or apparent), *see also Lugar*, 457 U.S. at 937, 102 S.Ct. 2744.

The holding by the Tenth Circuit that "an inmate has a constitutional right to be secure in their bodily integrity and free from attack by *prison guards*," *Hovater*, 1 F.3d at 1067 (emphasis added), was not intended to be a limitation hinging on job title, but rather an affirmation of inherent rights in regard to various government employees who serve as constructive or quasi-guards when prison officials are temporarily absent. It should be apparent to the parties involved at suit, and any other governmental employee who has custodial authority over an inmate, that taking sexual liberties against their will is a constitutional violation. This " 'conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts' that the action was unconstitutional, closely analogous preexisting case law is not required to show that the law is clearly established." [18] *Mendoza v. Block*, 27 F.3d 1357 (9th Cir.1994) (*quoting Casteel v. Pieschek*,

---

**17.** *See* Restatement 2d (Agency) § 219(2)(d) (finding that apparent authority exists where a victim's conclusions are reasonable as to the ostensible superior's authority over him or her).

**18.** *See also Fisher v. Goord*, 981 F.Supp. 140 (W.D.N.Y.1997) ("there can be no doubt that severe or repetitive sexual abuse of an inmate by a prison official can be objectively [and] sufficiently serious enough to constitute an

3 F.3d 1050, 1053 (7th Cir.1993)). Therefore, regardless how closely *Hovater* parallels the instant case, the previously held law by the Tenth Circuit should have put all government employees with authority over an inmate on notice as to what would constitute a constitutional violation regarding bodily integrity of an inmate.

Thus, the Court holds that inmates have just as much of a constitutional right to be secure in their bodily integrity and free from attack by government employees with de minimis control over inmates, as they do from state employed prison guards, primarily because of the inherent status of the inmates, themselves, as vulnerable wards of the state. Thus, Cochran is not entitled to summary judgment on his qualified immunity defense because Smith has alleged facts sufficient to show that Cochran violated clearly established federal law such that a reasonable government employee should have known [19] of the constitutional right of which he was depriving the plaintiff.

### Intentional Infliction of Emotional Distress Claim

■ Finally, as to her intentional infliction of emotional distress claim,[20] the Court finds, as a matter of law, that Cochran's conduct rises to the level of extreme and outrageous conduct under *Eddy v. Brown*, 715 P.2d 74 (Okla.1986). Cochran's alleged activity of demanding sexual relations with Smith in order for her to be granted extra privileges was so egregious and outrageous that it goes beyond the bounds of common decency and is utterly intolerable. *See Brock v. Thompson*, 948 P.2d 279 (Okla.1997); *See Breeden v. League Services Corp.*, 575 P.2d 1374, 1378 (Okla.1978). Smith has alleged conduct and actions by Cochran so unjustifiable and so senselessly destructive of her that it rises to the level of outrageous conduct, as that term describes the cause of action for intentional infliction of emotional distress.

■ In order to establish a *prima facie* case of intentional infliction of emotional distress, a plaintiff is required to show that a *tortfeasor* acted intentionally or recklessly, his conduct was extreme and outrageous, plaintiff actually experienced the emotional trauma, and that the emotional distress was severe. *See Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 (10th Cir.1991), *Anderson v. Oklahoma Temporary Services, Inc.*, 925 P.2d 574 (Okla.Ct.App.1996).

Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *See* Restatement of Torts (Second) § 46 Comment d. In this case, the jury could find that Cochran's alleged abuse and manipulation of a position of influence, in order to place inmate Smith in a sufficiently vulnerable position so that in order to keep pref-

---

Eight Amendment violation.") (internal quotation omitted).

19. The Court notes that in this case Cochran admits that he knew it was a crime to have sex with an inmate. *See* Cochran's deposition, 97, Cochran's Response to Plaintiff's Request for Admissions No. 7.

20. *See Zeran v. Diamond Broadcasting Inc.*, 19 F.Supp.2d 1249, 1253 (W.D.Okla.1997) *quoting Eddy*, 715 P.2d at 76–77 ("[o]nly when it is found that reasonable men could differ in an assessment of this critical issue may the tort-of-outrage claim be submitted to a jury").

erential treatment and privileges from being withheld she must submit to carnal knowledge and rape by instrumentation, was extreme enough to rise to the aforementioned level. Here, we are not dealing with "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *See id.*

A reasonable jury could find that Cochran's alleged acts are so atrocious and utterly intolerable, considering the circumstances of Smith's status, that no civilized person could be expected to endure them without suffering mental distress. In fact, Smith alleges that she was not only subject to unwanted sexual intercourse, but also rape by instrumentality using a salt shaker, fellatio, inappropriate sexual touching, and harassing sexual comments. Smith alleges that she suffered physical and emotional trauma from months of sexual torment that required her to seek medical treatment and psychological counseling. *See* Plaintiff's deposition, 165–76. A reasonable jury could find that these acts of sexual abuse constitute a deprivation which amount to a wanton infliction of emotional pain which is so malicious that it violates contemporary standards of decency. *See Jordan v. Gardner,* 986 F.2d 1521, 1525–31 (9th Cir.1993) (en banc) (holding that sexual assault, coercion, and harassment certainly may violate contemporary standards of decency and cause physical and psychological harm); *see generally Women Prisoners,* 877 F.Supp. at 664–67. Thus, the Court finds that Smith's emotional injury was severe.

Although the Tenth Circuit has previously held that "[n]othing short of '[extraordinary transgressions of the bounds of civility]' will give rise to liability for intentional infliction of emotional distress", *Starr v. Pearle Vision, Inc.,* 54 F.3d 1548, 1558 (10th Cir.1995), *quoting Merrick v. Northern Natural Gas Co.,* 911 F.2d 426, 432 (10th Cir.1990), being forced to perform deviant sexual acts for preferential treatment is the type of conduct for which recovery under the tort theory of intentional infliction of emotional distress may be allowed. The Court finds that reasonable minds could differ as to whether the facts of this case rise to the required level sufficient for an actionable cause of action, thus this action is not appropriate for summary judgment. Therefore, the Court denies the motion for summary judgment against the defendant on the tort of outrage.

*Conclusion*

For all the reasons heretofore given, the Court denies Cochran's motion for summary judgment concerning the violation of civil rights pursuant to 42 U.S.C. § 1983, the application of qualified immunity, and the cause of action concerning intentional infliction of emotional distress.

IT IS THEREFORE ORDERED that the motion for summary judgment filed by the defendant is hereby DENIED.