Abdel–Jabbor MALIK, Plaintiff,

v.

W. MACK, et al., Defendants.

No. 95–3213–RDR.

United States District Court, D. Kansas.

June 22, 1998.

Abdul–Jabbor Malik, Chester, NY, pro se.

Mary K. Ramirez, Office of United States Attorney, Topeka, KS, for Defendants.

### MEMORANDUM AND ORDER

ROGERS, District Judge.

This matter is before the court on a civil rights action filed under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Plaintiff, proceeding pro se and in forma pauperis, commenced this action while housed at the United States Penitentiary, Leavenworth, Kansas (USPL), alleging the defendant correctional officers

violated his rights under the First, Fourth, Fifth, and Eighth Amendments.

Plaintiff filed a motion for summary judgment (Doc. 19), and defendants have filed a motion to dismiss, or, in the alternative, a cross-motion for summary judgment (Doc. 23). Having examined the record, the court enters the following order.

**Factual Background**

Plaintiff entered federal custody for service of a term of 41 months for mailing a threatening communication and threatening a federal official. He was transferred to USPL on February 23, 1995, for disciplinary reasons and remained there until early December 1995.

On February 17, 1995, Captain Michael Jackson advised USPL staff that plaintiff was to be considered extremely dangerous and assaultive, that he would be housed in a closed front cell upon his arrival, and that three staff members and a lieutenant were to be present whenever the cell door was opened.

Upon plaintiff's arrival, he was placed in D Cellhouse in administrative segregation in a single cell pending review of his status. He remained in the D housing area until March 3, 1995, when he was moved to Building 63. He remained there in administrative segregation until May 3, 1995, when he was moved to administrative segregation in the Special Housing Unit, where he remained until he entered the general population on May 22, 1995. The decision to place plaintiff in the general population was based upon a favorable review of his conduct in administrative segregation.

On April 21, 1995, incident to plaintiff's transfer from Building 63 to the Special Housing Unit, staff advised him he would be strip-searched as required by local policy. Plaintiff first requested a camera and the presence of a lieutenant but submitted to the procedure. However, plaintiff declined to dress until he spoke to a lieutenant. Because other inmates were being moved into the Special Housing Unit, defendant Mack chose to move plaintiff into a single cell, a process which required plaintiff to be placed in hand and leg restraints. After the re-straints were applied, plaintiff was escorted to a single cell without incident. At the time, plaintiff did not complain of any injury, nor did any of the escorting officers notice any injury. Plaintiff complained of wrist pain on April 24, 1995, and a physician's assistant examined him. The examination revealed no swelling or visible injury, and some mild discomfort at movement. Plaintiff was prescribed pain medication.

Records from the Special Housing Unit law library reflect plaintiff used the law library on May 13 and 16, 1995, for approximately two hours each day but declined to use the law library on May 11 and 20.

**Standards for granting summary judgment**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing such a motion, the court examines all evidence in the light most favorable to the party opposing the motion. *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). Once the moving party has met its burden under Rule 56(c), the opposing party may not simply rely upon allegations or denials contained in the pleadings; instead, the opposing party must come forward with specific facts showing the existence of a material fact for trial and significant evidence supporting the allegations. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). One of the principal purposes of the summary judgment rule is to identify and dispose of factually unsupported claims and defenses, and Rule 56 is to be interpreted in a way that advances this purpose. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

**Discussion**

■ Plaintiff first asserts his rights under the First Amendment were violated by his placement in a single cell, apparently reasoning that the right to freedom of association and freedom of speech entitle him to a cell-

mate. Plaintiff advances no authority for this novel interpretation of these rights.[1]

■ "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Here, it is apparent from the record that prison officials took steps to isolate plaintiff from other inmates during his evaluation for placement in the general population and based upon information received prior to his arrival at the facility. The decision regarding plaintiff's housing status was a reasonable exercise of discretion, and the court finds no merit to plaintiff's claims that such isolation was an unreasonable incursion upon his First Amendment rights.

■ Plaintiff also challenges his placement in administrative segregation. It is now clear that such placement is viewed as within the ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)(protected liberty interests generally are limited to freedom from restraints which are atypical and significant hardships in relation to the ordinary incidents of prison life). Plaintiff's placement in a single cell was a reasonable exercise of the judgment of prison authorities in light of legitimate concerns about his behavioral history. Such decisions are entitled to deference. *See Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The court finds no genuine issue of fact is presented by these claims and concludes defendants are entitled to summary judgment.

■ Plaintiff next alleges he was subjected to excessive force by the use of restraints. Whether force is so excessive as to violate the Eighth Amendment depends upon the circumstances surrounding the incident and the amount of force used. *Whitley v. Albers*, 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). A use of force does not violate

the Eighth Amendment if it is "applied in a good faith effort to maintain or restore discipline" rather than performed "maliciously or sadistically for the very purpose of causing harm." *Id.* at 320–21, 106 S.Ct. 1078.

■ The extent of any injury suffered by the prisoner is also relevant. *Hudson v. McMillian*, 503 U.S. 1, 9–11, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). While a minor injury to an inmate will not bar an action for excessive force, "de minimis uses of physical force" generally are not sufficient to state a claim for relief. *Id.* at 9–10, 112 S.Ct. 995.

■ Here, the plaintiff's complaint of excessive force stems from a routine placement of restraints incident to a cell move during which plaintiff alleges he sustained a wrist injury and a cut lip. The record discloses only a slight wrist injury was detectable upon plaintiff's complaint, and there is no evidence of the cut lip. Because the record suggests no more than a brief application of force was used incident to an ordinary procedure for prisoner movement and at most, minor discomfort to the prisoner, the court concludes defendants likewise are entitled to summary judgment on this claim.

■ Plaintiff also alleges the defendants violated the Eighth Amendment by failing to provide him with adequate medical care for the injuries he has alleged. Prison officials violate the Eighth Amendment when they are deliberately indifferent to a prisoner's "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). However, no claim of constitutional dimension is stated where a prisoner challenges only matters of medical judgment or otherwise expresses a mere difference of opinion concerning the appropriate course of treatment. *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir.1992). Similarly, a delay in providing medical care does not violate the Eighth Amendment unless there has been deliberate indifference resulting in substan-

---

1. The court notes petitioner has asserted these claims unsuccessfully in the past. *See Malik v. Kindt*, 76 F.3d 393, Case No. 95–6057, 1996 WL 41828 (10th Cir.1996) *2–3 (finding defendants were entitled to qualified immunity on similar claims arising from plaintiff's incarceration in Special Housing Unit in federal prison at El Reno, Oklahoma.) A copy of this unpublished decision is attached.

tial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir.1993).

■ Viewed under these standards, the record does not support plaintiff's claim of inadequate medical treatment. First, there is no evidence that the plaintiff notified defendants of his injuries at the time of the cell move on April 21, 1995. Defendants did not observe any injury. Next, the medical records from the examination performed on April 24, 1995, do not reflect any serious injury to plaintiff's writs, and there is no record that plaintiff complained of any injury to his lip. Accordingly, the court concludes plaintiff has failed to support a claim of deliberate indifference, and defendants are entitled to summary judgment on this claim as well.

■ Plaintiff also alleges defendants violated his constitutional rights by interfering with his access to legal materials. The right of access to the courts bars prison authorities from "actively interfering with inmates' attempts to prepare legal documents, or file them." *Lewis v. Casey*, 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (citation omitted). However, to establish a claim of denial of access to the courts, a prisoner must demonstrate an "actual injury" by showing the denial of legal resources prejudiced present or pending litigation. *Id.* at 351–53, 116 S.Ct. 2174; *accord Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir.1996).

■ Plaintiff's claims fall far short of establishing that delay in access to legal materials caused any actual injury to his legal pursuits. The record shows plaintiff was given access to the law library in the Special Housing Unit on at least two occasions during the period he was housed there and that he declined the opportunity on two other occasions. There is no specific showing that he was unable to timely file any pleading in ongoing litigation or that he otherwise was prejudiced. Plaintiff presents no genuine issue of material fact, and defendants are entitled to summary judgment on this claim.

### Conclusion

For the foregoing reasons, the court concludes plaintiff has failed to present any evidence in support of his claims which reasonably suggests the existence of a triable issue of fact.

IT IS THEREFORE ORDERED plaintiff's motion for summary judgment (Doc. 19) is denied, and defendants' motion for summary judgment (Doc. 23) is granted.

**IT IS SO ORDERED.**

#### *Attachment*

NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.

(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)

Abdul–Jabbor MALIK, Plaintiff–Appellant,

v.

Warden Tom R. KINDT; Associate Warden Calbone, Defendants–Appellees.

No. 95–6057.

United States Court of Appeals, Tenth Circuit.

Feb. 2, 1996.

Before PORFILIO, KELLY, and LUCERO, Circuit Judges.

### ORDER AND JUDGMENT [FN1]

FN1. At the parties' request, the case is unanimously submitted without oral argument pursuant to the applicable rules. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be

cited under the terms and conditions of 10th Cir. R. 36.3.

LUCERO, Circuit Judge.

\* \*1 Plaintiff Abdul–Jabbor Malik, a federal prisoner, appeals from a judgment dismissing his action against defendants Tom R. Kindt and Sam Calbone brought pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). We affirm in part, reverse in part, and remand for further proceedings.

Between February 9 and March 24, 1994, plaintiff was placed in the Special Housing Unit (SHU) at the federal prison at El Reno, Oklahoma, while in transit from one federal prison to another. He was confined in the cell for twentythree hours a day and was handcuffed whenever he left his cell. He was not permitted to attend Friday night Muslim religious services.

Plaintiff commenced this action, alleging his confinement in the SHU violated various constitutional rights. Defendants filed a special report. They moved to dismiss on the ground, inter alia, that they were entitled to qualified immunity. A magistrate judge recommended that the motion to dismiss be treated as a motion for summary judgment and that it be granted because defendants were entitled to qualified immunity. Following a de novo review, the district court adopted the magistrate judge's recommendation and granted defendants' motion for summary judgment.

Qualified immunity is a question of law that we review de novo. Liebson v. New Mexico Corrections Dep't, No. 94–2210, 1996 WL 1125, at \*1 (10th Cir. Jan.2, 1996). We "first determine whether the plaintiff has asserted a violation of a constitutional right at all." Id. (quotation omitted). We "then determine whether that right was clearly established so that reasonable officials in defendants' situation would have understood their conduct violated that right." Id. When qualified immunity is raised, the plaintiff must come forward with facts showing that the defendant's conduct violated the law and that the law was clearly established at the time of the alleged violation. Gehl Group v. Koby, 63 F.3d 1528, 1533 (10th Cir.1995).

Plaintiff first argues that he was entitled to notice and a hearing before there was a major change in the conditions of his confinement, specifically, his placement in the SHU. Plaintiff was placed in the SHU as a consequence of being in administrative detention. He was in administrative detention because he was in holdover status and was classified as a high security inmate with maximum custody. R. Vol. I, doc. 10, attach. at 4.

"The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 2298, 132 L.Ed.2d 418 (1995)(quotation omitted). "[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." Hewitt v. Helms, 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Therefore, "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration," and does not involve an interest independently protected by the Due Process Clause. Id.

\* \*2 While the government may create liberty interests protected by the Due Process Clause, these interests are generally limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 115 S.Ct. at 2300. However, the Court indicated that confinement in administrative segregation was not the type of "atypical, significant deprivation" in which a liberty interest might be created. Id. at 2301. We therefore conclude the Due Process Clause does not require that plaintiff be provided with notice and a hearing prior to his placement in the SHU. Defendants were entitled to qualified immunity on this claim.

Plaintiff points to various provisions of 28 C.F.R. § 541.22 that he claims entitled him to certain procedures which were not provided. However, a Bivens action "must be founded upon a violation of constitutional rights," Arcoren v. Peters, 829 F.2d 671, 676 (8th Cir.1987), cert. denied, 485 U.S. 987, 108

S.Ct. 1290, 99 L.Ed.2d 500 (1988), and "a failure to adhere to administrative regulations does not equate to a constitutional violation," Hovater v. Robinson, 1 F.3d 1063, 1068 n. 4 (10th Cir.1993). Plaintiff was not entitled to relief on this claim.

Plaintiff also contends that his rights under 42 U.S.C. § 2000bb, the Religious Freedom Restoration Act of 1993, were violated when he was not allowed to attend Muslim services on six occasions while housed in the SHU. The district court did not address this issue; defendants request that we remand so that it may do so. We agree that a remand for this purpose is appropriate.

Plaintiff contends his First Amendment rights to freedom of association and speech were violated when he was restrained in his cell for twenty-three hours a day. Presumably plaintiff's contention is that he was not permitted to socialize with other inmates when confined in his cell. However, he admits he had a cellmate for one week out of his confinement. R. Vol. I, doc. 11 at 16.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). The Court has recognized that, to accommodate prison institutional needs and objectives, it is necessary to place major restrictions on prisoners' First Amendment rights. Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 129–30, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). First Amendment associational rights may be curtailed whenever prison officials, exercising informed discretion, reasonably conclude that such associations "possess the likelihood of disruption to prison order or stability, or otherwise interfere with the legitimate penological objectives of the prison environment." Id. at 132, 97 S.Ct. 2532. "[P]rison administrators are to be accorded wide-ranging deference in adopting and executing policies and practices," and, absent substantial evidence in the record indicating they exaggerated their response to considerations of order, discipline, and security, we will ordinarily defer to their judgment. Ramos v. Lamm,

639 F.2d 559, 579 (10th Cir.1980)(quotation omitted), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981).

* *3 Plaintiff has pointed to no evidence in the record showing that defendants exaggerated their response to these considerations by restricting his ability to socialize with other inmates the twenty-three hours a day that he was confined in his cell without a cellmate. We therefore conclude defendants were entitled to qualified immunity on his First Amendment claim.

Plaintiff's next claim is that being handcuffed every time he left his cell to go to the shower or recreation yard, and being kept in his cell twenty-three hours a day, constituted a seizure in violation of the Fourth Amendment. As the district court recognized, "the Fourth Amendment has no applicability to a prison cell." Hudson v. Palmer, 468 U.S. 517, 536, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). However, traditional Fourth Amendment principles still apply when a personal body search of a prisoner is challenged. Dunn v. White, 880 F.2d 1188, 1191 (10th Cir.1989), cert. denied, 493 U.S. 1059, 110 S.Ct. 871, 107 L.Ed.2d 954 (1990).

Plaintiff is challenging neither a search of his cell, nor a personal body search. He has cited no case law establishing that use of handcuffs on a prisoner, or his placement in a cell for a certain length of time, constitutes a "seizure" for Fourth Amendment purposes. Certainly he has not shown that the law was clearly established in February and March of 1994 that such measures constituted a seizure.

Defendants are entitled to qualified immunity on the Fourth Amendment claim.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED in part, REVERSED in part, and the case is REMANDED for further proceedings consistent with this order and judgment. The mandate shall issue forthwith.

END OF DOCUMENT