**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 20, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BRYAN WAYNE DAVENPORT,

    Plaintiff - Appellant,

v.

BECKY PATA; LT. FNU BEEM;
TURN KEY HEALTH CLINICS, LLC;
CPT. FNU GARNER,

    Defendants - Appellees.

No. 24-6117
(D.C. No. 5:20-CV-00358-J)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **BALDOCK**, and **EID**, Circuit Judges.
_____

    Pro se appellant Bryan Wayne Davenport is an Oklahoma prisoner who

brought a 42 U.S.C. § 1983 suit concerning his medical treatment while he was a

pretrial detainee at Cleveland County Detention Center (CCDC).  The district court

dismissed the claims against all but one defendant—nurse practitioner Becky Pata—

and then later granted summary judgment to Ms. Pata.  Mr. Davenport appeals only

---

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the grant of summary judgment to Ms. Pata.[1]  Exercising jurisdiction under 28 U.S.C. § 1291, we reverse the judgment in favor of Ms. Pata and remand for further proceedings.

## BACKGROUND

Mr. Davenport was diagnosed with human immunodeficiency virus (HIV) in 2013.  He was prescribed antiretroviral medications to keep his HIV from developing into Acquired Immunodeficiency Syndrome (AIDS).  He was not consistently taking those medications, however, in the months before he arrived at CCDC.

Mr. Davenport was detained at CCDC starting on June 28, 2019.  Turn Key is contracted to provide medical care at CCDC.  At intake, Mr. Davenport informed Turn Key staff of his HIV status, but he also stated he was not taking any prescription medications.  On July 19, he filed a sick call request marking the box for "HIV/Aids" and stating, "[I] have not been started on my[ ]med."  R. vol. V at 192. Three days later, on July 22, he had an appointment with Ms. Pata, at which he told her about his HIV status, his medications, and his doctor and hospital information.

According to Mr. Davenport, Ms. Pata responded that she did not want to start treatment for HIV.  She did not order blood work, did not order antiretroviral medications, and did not refer him to a doctor.  According to Ms. Pata, she assessed his condition as being stable and ordered that he be scheduled for an off-site

---

[1] Mr. Davenport's opening brief does not challenge the dismissal of the claims against the other defendants.  *See Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) ("Issues not raised in the opening brief are deemed abandoned or waived." (internal quotation marks omitted)).

consultation with a specialist.  But the consultation did not happen.  Ms. Pata asserts that scheduling was handled by other Turn Key personnel, who for unknown reasons failed to make an appointment for Mr. Davenport.

Having received no treatment for his HIV, Mr. Davenport filed suit in April 2020.  As relevant to this appeal, he claimed Ms. Pata violated his Fourteenth Amendment right to care for his serious medical condition.  In early July 2020, Ms. Pata was served with the suit and claims she learned for the first time that Mr. Davenport had never been scheduled for his off-site consultation.  She ordered a consultation, and the consultant directed Turn Key to obtain blood work.  Ms. Pata saw Mr. Davenport in clinic that same day and began trying to persuade him to allow Turn Key to do the blood work.  At the visit, Mr. Davenport complained of nausea, vomiting, diarrhea, and a skin infection, which Ms. Pata diagnosed as a fungal rash. He also complained that he had been suffering "painful small sores, like pimples, in his mouth," although he did not have any at that time.  *Id.* at 81.  He was reluctant to accept treatment from Turn Key personnel rather than an off-site specialist, but on July 22, he allowed Turn Key personnel to draw blood.  Lab results indicated that his CD4 count had lowered and his viral levels of HIV had increased, but the HIV had not progressed to AIDS.  In August 2020, Mr. Davenport began taking an antiretroviral medication, and in September 2020, he saw the off-site specialist. After he began taking the antiretroviral medication, his HIV levels declined to nondetectable.

3

The claim survived a motion to dismiss and the parties engaged in discovery. When Ms. Pata moved for summary judgment, Mr. Davenport did not respond. The magistrate judge issued a report recommending that the district court grant the motion. Mr. Davenport filed objections, notifying the district court that he had never received a copy of the motion. The district court allowed him an extension to file a response. Ultimately the district court granted summary judgment to Ms. Pata.

## DISCUSSION

### I.    Standard of Review

We review a grant of summary judgment de novo. *Johnson v. Sanders*, 121 F.4th 80, 88 (10th Cir. 2024). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law." *Johnson*, 121 F.4th at 88 (brackets and internal quotation marks omitted).

In considering summary judgment, the court "must view the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Id.* (internal quotation marks omitted). "[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge when ruling on a motion for summary judgment." *Keith v. Koerner*, 843 F.3d 833, 852 (10th Cir.

4

2016) (internal quotation marks omitted). "Rather, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Id.* (brackets and internal quotation marks omitted).

We liberally construe a pro se appellant's filings, "but we will not act as his advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

## II.    Legal Standards

"The Fourteenth Amendment prohibits deliberate indifference to a pretrial detainee's serious medical needs." *Crowson v. Washington Cnty.*, 983 F.3d 1166, 1178 (10th Cir. 2020) (internal quotation marks omitted). We apply the same two-part inquiry as under the Eighth Amendment. *See id.* "This exercise requires both an objective and a subjective inquiry. The objective component is met if the deprivation is sufficiently serious. The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (ellipsis, citations, footnote, and internal quotation marks omitted).

"The Supreme Court has explained that deliberate indifference entails something more than mere negligence. But it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1154 (10th Cir. 2022) (citation and internal quotation marks omitted). "[T]he Court has equated deliberate indifference to recklessness, in which a person disregards a risk of harm of which he is aware." *Id.* (internal quotation marks omitted). "The official must be aware of the facts from which the inference of a substantial risk of serious harm could be drawn and also

5

draw that inference." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023).

> A plaintiff need not show that a prison official acted or failed to act believing that harm actually would befall an inmate, but rather that the official merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence such as whether the risk was obvious. An official disregards risk when he fails to take reasonable measures to abate the risk.

*Id.* (citations and internal quotation marks omitted).

In the context of prison medical care, this court has "recognize[d] two types of conduct constituting deliberate indifference." *Paugh*, 47 F.4th at 1154 (internal quotation marks omitted). One is "when medical professionals fail to treat a serious medical condition properly," including when the provider "fails to treat a medical condition so obvious that even a layman would recognize the condition [or] completely denies care although presented with recognizable symptoms which potentially create a medical emergency." *Id.* (internal quotation marks omitted). The other is when a defendant fails to perform a duty as a gatekeeper—that is, when he or she "prevent[s] an inmate from receiving medical treatment or den[ies] . . . access to medical personnel capable of evaluating the need for treatment." *Id.* (internal quotation marks omitted).

## III.    Objective Prong

In moving for summary judgment, Ms. Pata argued that Mr. Davenport's HIV did not satisfy the objective prong because (1) he had not consistently taken HIV

medications before arriving at CCDC, and (2) he had not suffered any permanent harm or injury from not being treated for HIV from July 2019-July 2020. The district court disagreed, concluding that Mr. Davenport satisfied the objective prong because he had been diagnosed with HIV, he previously had been medicated for it, and Ms. Pata believed that he required further care and monitoring from a specialist. *See, e.g.*, *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) ("A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." (internal quotation marks omitted)). On appeal, Ms. Pata does not challenge this determination. We therefore assume without deciding that the objective prong is satisfied, and we proceed to the subjective prong.

## IV.    Subjective Prong

The district court held that Mr. Davenport had not created a genuine issue of material fact as to whether Ms. Pata was deliberately indifferent either as a health care provider or as a gatekeeper. We disagree. When viewed in the light most favorable to Mr. Davenport, the record contains sufficient evidence to allow a reasonable factfinder to conclude that Ms. Pata was deliberately indifferent to Mr. Davenport's serious medical need.

### A.    Ms. Pata as Health Care Provider

In considering Ms. Pata in her capacity as a health care provider, the district court held it was reasonable for her to refer Mr. Davenport to a specialist before

prescribing medication for him. This observation, however, views the record in the light most favorable to Ms. Pata, rather than to Mr. Davenport.

The record contains two sworn statements from Ms. Pata, a declaration under penalty of perjury executed on August 31, 2020, and an affidavit executed on September 27, 2023.[2] *See* R. vol. IV at 521-29; R. vol. V at 123-33. Neither statement asserts that in Ms. Pata's medical judgment, a specialist should see Mr. Davenport before she could begin treatment for his HIV. To the contrary, the statements omit any explanation for why she did not order tests or prescribe medications for Mr. Davenport in July 2019.[3] Any inference that Ms. Pata acted according to her medical judgment thus is unsupported and can be made only by viewing the record in her favor rather than Mr. Davenport's.

Mr. Davenport also identified other evidence that, if credited by a factfinder, could support a finding that Ms. Pata was deliberately indifferent in not providing treatment for HIV following the July 22, 2019, visit.

---

[2] Ms. Pata attached the 2023 affidavit to her motion for summary judgment. Mr. Davenport attached the 2020 declaration to his response. Ms. Pata does not contest the authenticity of the 2020 declaration.

[3] Further, the record indicates that ordering testing and prescribing medications was within Ms. Pata's authority; that Mr. Davenport told her he had not been on medications for approximately five months when she saw him in July 2019; that guidelines from health authorities "recommend that all persons with HIV infection be offered effective [antiretroviral medications] as soon as possible," R. vol. V at 112; and that to Ms. Pata's knowledge, "[i]t is not unusual for it to take several months to schedule off-site specialty appointments," R. vol. IV at 100.

First, he offered evidence that Ms. Pata directly told him that she did not want to treat his HIV. In his summary judgment response, Mr. Davenport stated, "On July 22, 2019, when I first asked Pata to restart my HIV medication, in a 'chronic care clinic,' Pata responded that she 'didn't want to start treatment,' and for eleven months she provided no HIV treatment." R. vol. V at 45. In support of that response, he supplied a declaration under penalty of perjury connecting the alleged statement by Ms. Pata to his HIV. *See id.* at 212. The district court did not acknowledge this evidence.[4]

Second, Ms. Pata alleges that she assessed Mr. Davenport as medically stable on July 22, 2019. But she never explains how she adequately could assess his HIV status without ordering blood tests and reviewing laboratory results.[5] *See Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 489 n.3 (1st Cir. 2011) ("The parties state that the CD4 cell count is the best estimate of an HIV-positive individual's risk of short-term progression to develop the clinical symptoms and risk of complications of HIV.").

Third, Mr. Davenport also presented evidence that Ms. Pata failed to comply with Turn Key's policies. The Turn Key job description assigns responsibility to a

---

[4] Ms. Pata avers that she "never ignored or disregarded Mr. Davenport's medical needs" and "never denied or delayed Mr. Davenport access to care." R. vol. IV at 529. A court considering summary judgment, however, cannot resolve witnesses' conflicting accounts.

[5] In contrast, Ms. Pata avers she did request testing in July 2020 so she could "assess [Mr. Davenport's] overall medical condition," R. vol. IV at 525, and "to get a more complete picture of [his] clinical condition," *id.* vol. V at 127.

nurse practitioner to develop plans for care and treatment, implement such plans, monitor patients' status, and facilitate offsite consultations and testing.  Turn Key Policy J-20 provides that treatment plans "shall include, at a minimum . . . [t]he frequency of follow-up for medical evaluation and adjustment of treatment modality" and "[t]he type and frequency of diagnostic testing and therapeutic regimens." R. vol. V at 110.  Viewing the record in the light most favorable to Mr. Davenport, a factfinder could conclude that Ms. Pata did not develop or implement a plan of care for HIV; did not evaluate Mr. Davenport's HIV status; did not properly facilitate an offsite consultation for HIV; and did not facilitate testing for HIV.

Of course, "a failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993).  Nor does negligent conduct, even negligent conduct that may constitute medical malpractice.  *See Paugh*, 47 F.4th at 1154.  But evidence that an official failed to follow policy may nevertheless be relevant to proving deliberate indifference.  *See Tafoya v. Salazar*, 516 F.3d 912, 919 (10th Cir. 2008) ("The knowing failure to enforce policies necessary to the safety of inmates may rise to the level of deliberate indifference."); *see also United States v. Buntyn*, 104 F.4th 805, 811 (10th Cir. 2024) (holding, in a criminal case, that "a jury could consider violations of company policy in finding deliberate indifference and willfulness").

In short, Mr. Davenport identified sufficient evidence for a factfinder to conclude that Ms. Pata was aware of facts from which she could draw the inference of a substantial risk and that she drew that inference.  *See Leavitt*, 645 F.3d at

10

498-99, 505 (vacating summary judgment in favor of physician assistant who failed to review test results and provide medications to HIV-positive prisoner, where physician assistant knew that prisoner had HIV, he had not had access to antiretroviral medications for at least a month, his CD4 count was abnormally low on previous tests, he was complaining of symptoms, and he told the provider that he needed his antiretroviral medications). The district court therefore erred in granting summary judgment on the question whether Ms. Pata was deliberately indifferent in her capacity as a health care provider.

### B.    Ms. Pata as Gatekeeper

Regarding Ms. Pata's capacity as a gatekeeper, the district court accepted as an undisputed fact that she referred Mr. Davenport to an HIV specialist. In doing so, it again viewed the evidence in the light most favorable to Ms. Pata, rather than to Mr. Davenport. Although Ms. Pata points to a note she placed in Mr. Davenport's file about making a referral, it is undisputed the note had no effect. And Mr. Davenport identified evidence that could support a conclusion that Ms. Pata did not properly request a consultation by an outside specialist in July 2019.

Mr. Davenport submitted Turn Key Policy J-18, which Ms. Pata admitted is the proper procedure for requesting an off-site/specialty service. Policy J-18 directs health care providers to fill out a "Specialty Service/Consultation Request" form to request an off-site specialty consultation. Policy J-18 provides that the provider will send the form to the Chief Medical Officer (CMO) for review. Upon approval by the CMO, "the nurse supervisor will schedule the requested services." R. vol. V at 90.

11

Ms. Pata, however, did not fill out the Specialty Service/Consultation Request form in July 2019. Based on Policy J-18, it is a reasonable inference in favor of Mr. Davenport that an offsite specialty consultation would not occur unless or until Ms. Pata filled out the form to obtain the CMO's approval, so that the nurse supervisor could schedule the requested services.

Ms. Pata asserted in discovery that it was not necessary for her to fill out the form because "all HIV patients are referred to a specialist." *Id.* at 98. A factfinder, however, would not be required to accept this assertion. Policy J-18 does not contain an exception on its face for HIV patients. Also, the very events underlying this lawsuit contradict this assertion: Mr. Davenport was known to be HIV-positive, but he was not referred to a specialist until well after he filed suit. In addition, Ms. Pata's own statement of undisputed material facts indicates that she followed the Policy J-18 procedure to provide treatment to Mr. Davenport in July 2020. *See* R. vol. IV at 103 (asserting that after she saw Mr. Davenport in July 2020, Ms. Pata "made a specialty request to have Mr. Davenport transported to OU Infectious Disease to have his labs drawn. This request was approved by Ms. Pata's Medical Director, and the nurse began attempting to coordinate with OU Infectious Disease to schedule this appointment.").[6]

---

[6] In *Crowson*, we held that a nurse discharged his gatekeeper duty when he requested a psychological evaluation by placing a note in the detainee's file. 983 F.3d at 1180. But the nurse also spoke with other providers about the detainee's condition. *See id. Crowson* thus is distinguishable.

12

Whether Ms. Pata referred Mr. Davenport for specialty treatment thus is a question of material disputed fact. A factfinder could conclude that Ms. Pata did not properly request an outside consultation and thus failed to fulfill her gatekeeper duty—especially if that factfinder credits Mr. Davenport's assertion that Ms. Pata told him that she did not want to treat his HIV. Accordingly, the district court erred in granting summary judgment to Ms. Pata in her capacity as a gatekeeper. *See Leavitt*, 645 F.3d at 499-500 ("The district court was too quick to decide that [the defendant's] version was credible and [the plaintiff's] not. This is precisely the sort of genuine and material dispute that ought to be resolved by a jury.").

## V.    Substantial Harm

After considering the objective and subjective components of deliberate indifference, the district court separately addressed whether Mr. Davenport suffered substantial harm from the lack of treatment for his HIV from July 2019-July 2020. It was unnecessary, however, for the district court to reach the question of substantial harm in deciding Ms. Pata's motion.

Substantial harm is relevant to establishing the objective prong in a case in which the plaintiff claims a delay in care. *See, e.g.*, *Paugh*, 47 F.4th at 1155 ("[A] plaintiff can also satisfy the objective component based on a delay in medical care if the delay resulted in substantial harm." (ellipsis and internal quotation marks omitted)); *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) ("[A] delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." (internal quotation marks omitted)). But the

13

district court had already held that Mr. Davenport's HIV satisfied the objective component. Moreover, as we understand it, Mr. Davenport claims a *denial* of care, not merely a *delay* in care. *See* Aplt. Opening Br. at CM/ECF p. 9 (stating that the district court erroneously interpreted his claim as "a mere delay in treatment" but "[i]n truth, [his] allegations center on a complete and callous denial of necessary medical treatment"). Mr. Davenport did not receive any care for HIV until after he filed this action, and in total, the failure to provide care lasted for nearly a year. The cases the district court relied on in its substantial-harm discussion are distinguishable in that they involved much shorter lapses in treatment—seven days and five days in *Smith v. Carpenter*, 316 F.3d 178, 181 (2d Cir. 2003), and ten days in *Doe v. Board of County Commissioners*, No. CIV-13-108-F, 2014 WL 11353290, at *1 (W.D. Okla. July 28, 2014) (unpublished).[7]

## CONCLUSION

We reverse the summary judgment in favor of Ms. Pata and remand for further proceedings. We affirm the remainder of the judgment. We grant Mr. Davenport's motion to proceed without prepayment of costs or fees and remind him that he must continue making partial payments until the obligation is fully paid. *See* 28 U.S.C.

---

[7] Even if Mr. Davenport's allegations became a claim for delay of care after Ms. Pata learned of the suit and began providing care for his HIV, the substantial harm requirement "may be based on an intermediate injury, such as the pain experienced while waiting for treatment and analgesics. Or it may be based on the inmate's ultimate harm. The plaintiff selects what harm to claim." *Paugh*, 47 F.4th at 1155 (citations and internal quotation marks omitted).

§ 1915(a)(1) (excusing only "prepayment" of fees).  We deny his motion for appointment of counsel on appeal.

Entered for the Court


Carolyn B. McHugh
Circuit Judge